

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2005

# Knapper v. Bankers Trust Co

Precedential or Non-Precedential: Precedential

Docket No. 03-3552

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Knapper v. Bankers Trust Co" (2005). *2005 Decisions.* Paper 1082.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1082

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-3552

IN RE:

PAMELA KNAPPER, f/k/a Pamela Jones,


PAMELA KNAPPER; WILLIAM C. MILLER,

Appellants

v.

BANKERS TRUST CO., AS TRUSTEE FOR AMRESCO
RESIDENTIAL SECURITIES CORP.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. No. 03-cv-01754)
District Judge: Hon. Clarence C. Newcomer

Before: McKEE, Circuit Judge, and ROSENN and
WEIS, Senior Circuit Judges

Argued: September 22, 2004


1

(Opinion filed: May 24, 2005)

DAVID A. SCHOLL, ESQ.  (Argued)
Regional Bankruptcy Center of Southeastern PA
6 St. Albans Avenue
Newtown Square, PA 19073
Attorney for Appellant

WILLIAM C. MILLER, ESQ.
The Bourse Building, Suite 583
111 South Independence Mall East
Philadelphia, PA 19106
Attorney for Appellant

LESLIE E. SMILAS-PUIDA, ESQ.
KRISTINA G. MURTHA, ESQ. (Argued)
Goldbeck, McCafferty & McKeever
Suite 5000 – Mellon Independence Center
701 Market Street
Philadelphia, PA 19106
Attorneys for Appellee

OPINION

McKEE, Circuit Judge.

Pamela Knapper appeals the district court's order affirming the bankruptcy court's refusal to void two default foreclosure judgments and the resulting sheriff's sale of two parcels of real property.  Since Knapper's attempt to void the default judgments is foreclosed by the *Rooker-Feldman*

doctrine, we will vacate the district court's order and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction.

## I. FACTUAL BACKGROUND

In 1982, Pamela Jones purchased real property located at 8216 Gilbert Street, Philadelphia, Pennsylvania. In 1989, she inherited real property located at 5013 Willows Avenue, also in Philadelphia. Thereafter, in 1996, she married Robert Knapper and became known as "Pamela Knapper." She and her husband lived in the Gilbert Street property after their marriage, and she rented out the Willows Avenue property.

In February 1998, a mortgage lien was placed on both parcels of real estate as a result of one or more loan agreements Knapper entered into with Amresco Residential Securities Corporation. On March 19, 1999, Bankers Trust, as trustee for Amresco, filed a foreclosure complaint on the Willows Avenue property in the Court of Common Pleas of Philadelphia County. The complaint alleged that Knapper resided at 1812 Gilbert Street, and it was served on September 7, 1999, by Louis Giacomelli, a self-employed process server. Giacomelli's affidavit of service recited that the complaint was served on an "[a]dult in charge of Defendant's residence who refused to give name or relationship." Giacomelli testified that the adult he served was a man he believed to be Robert Knapper, Pamela's husband.

No answer was filed to the complaint. Consequently, Bankers Trust obtained a default judgment in foreclosure in the

3

amount of $43,333.72 in July 2000.  Thereafter, Bankers Trust scheduled the Willows Avenue property for foreclosure sale. According to the  bankruptcy court's recitation of the facts, Giacomelli served notice of the intended sale on October 3, 2001 at the Gilbert Street address.  The sale occurred on April 2, 2002 and a sheriff's deed was issued on June 3, 2002.

In April 1999, Bankers Trust had also begun a state court foreclosure action against the Gilbert Street property. Giacomelli served that complaint on April 24, 1999 at the Gilbert Street property.  He served it on an "[a]dult in charge of Defendant's residence who refused to give name or relationship."  Giacomelli believed that he served it on Robert Knapper, although Robert Knapper denied receiving it.

In any event, a default judgment was entered in either July or August 2000 in the amount of $67,232.03.  A writ of execution was issued and, according to the bankruptcy court's factual recitation, notice of the proposed sheriff's sale was again personally served by Giacomelli on October 3, 2001 at the Gilbert Street address.  The sale took place on April 2, 2002, and a sheriff's deed was issued on June 3, 2002.   Bankers Trust, as trustee for Amresco, was the sheriff's sale purchaser for both parcels of real estate.

Knapper never appeared in state court to strike or open either default judgment. Instead, she filed four prior unsuccessful bankruptcy petitions under Chapter 13 in an effort

4

to prevent the foreclosure of her properties.[1]  The first was filed

---

[1]According to the bankruptcy court's opinion, earlier attempts at foreclosure sales were stayed by the four bankruptcy filings.  That history is consistent with the role one observer has attributed to Chapter 13's impact on residential mortgages:

> Chapter 13 is entitled "Adjustment of Debts of an Individual with Regular Income."  A Chapter 13 bankruptcy is best envisioned as a repayment plan organized through the bankruptcy court.  In contrast to Chapter 7, which requires a debtor to give up her non-exempt assets in return for a discharge of debts, a Chapter 13 debtor proposes a repayment plan to the court. . . . .
> Chapter 13's greatest significance for debtors is its use as a weapon to avoid foreclosure on their homes. . . . Chapter 13 bankruptcies do not result in destruction of the interests of traditional mortgage lenders.  Under Chapter 13, a debtor cannot discharge a mortgage debt and keep her home.  Rather, a Chapter 13 bankruptcy offers the debtor an opportunity to cure a mortgage delinquency over time – in essence it is a statutorily mandated payment plan – but one that requires the debtor to pay precisely the amount she would have to pay to the lender outside of bankruptcy.  Under Chapter 13, the plan must provide the amount necessary to cure the mortgage default, which includes the fees and

on September 13, 1999.  It was dismissed on May 9, 2000 because Knapper failed to tender payments as required by her plan.  The second was filed on September 21, 2000, but was dismissed because Knapper failed to appear at the creditors' meeting.  The third was filed on May 3, 2001, and was dismissed because the required bankruptcy schedules were not filed.  The fourth was filed on January 4, 2002, but was dismissed because she again failed to appear at the creditors' meeting. On May 16, 2002, more than a month after the sheriff's sales, Knapper filed this bankruptcy petition, her fifth under Chapter 13.

Knapper testified that she was living in Virginia Beach for reasons related to her employment while the two foreclosure actions and the first bankruptcy proceeding were pending.  She claimed that she lived there from August 1998 until June 2000.

---

costs allowed by the mortgage agreement and by state law. . . . Even though a debtor must, through reinstatement of her delinquent mortgage by a Chapter 13 repayment plan or by plan payments that pay the entire mortgage off over the life of the plan, pay her full obligation to the lender, Chapter 13 remains the only viable way for most mortgage debtors to cure defaults and save their homes.

Susan L. DeJarnatt, *Once Is Not Enough: Preserving Consumers' Rights to Bankruptcy Protection*, 74 Ind. L.J. 455, 458-59, 495-96 (1999).

According to her testimony, she visited Philadelphia once or twice each month while she was living in Virginia, but her husband lived by himself at the Gilbert Street property.[2] She corroborated testimony about her Virginia residence by offering a Virginia driver's license with an issuance date of January 11, 1999, a 1998 moving expense reimbursement voucher from her employer ( the voucher did not specify the location Knapper was moved to), an employee evaluation dated September 1999 which refers to her work in Norfolk, Virginia, and various utility bills from 1999 and 2000 listing her address in Virginia Beach. Knapper offered no evidence that she made the mortgage payments on the two Philadelphia properties after she said she leased the Virginia apartment, and her husband testified that he did not make mortgage payments on either property.

Bankers Trust countered Knapper's claim of a Virginia residence by noting that she listed the Gilbert Street address in Philadelphia as her residence on each of her bankruptcy petitions.[3] Bankers Trust also noted that Knapper

---

[2]Knapper claimed that she and her husband were estranged while she was living in Virginia, but they began living together again upon her return to Philadelphia.

[3]Knapper claimed that she told her attorney who filed the bankruptcy petitions in 1999 and 2000 that her residence was in Virginia during that time period, but the attorney chose the Gilbert Street property as the appropriate address to put on the bankruptcy petitions.

acknowledged her failure to file any forwarding address from the Gilbert Street property to the Virginia address with the post office. She offered no evidence that she moved any of her furnishings from Philadelphia to Virginia, and she provided no tax documents (e.g., W-2 forms or federal or state tax returns) or voting registration evidencing residency in Virginia. Finally, Bankers Trust argued that even if Knapper had relocated to Virginia, there was no evidence to establish that she intended to remain there rather than return to Philadelphia to live with her husband on Gilbert Street.

## II. PROCEDURAL HISTORY

As we have recited, this is Knapper's fifth Chapter 13 bankruptcy proceeding. It arose as an adversary proceeding against Bankers Trust, as trustee for Amresco. Knapper is seeking to have the two pre-petition sheriff's sales vacated.[4] In her adversary proceeding, she alleged that the state court lacked personal jurisdiction over her because she was never served with the complaints that resulted in the default judgments and subsequent sheriffs' sales of her real estate.[5]

---

[4]The complaint filed in the adversary proceeding lists Knapper and the Standing Chapter 13 Trustee as plaintiffs. However, the trustee did not participate in the adversary proceeding.

[5]Bankers Trust has initiated state court proceedings to evict Knapper and her husband from the Gilbert Street property and to evict the tenant from the Willows Avenue property. The

After a trial, the bankruptcy court found that Knapper was residing in Virginia in 1999 when the two foreclosure complaints were served at the Gilbert Street property in Philadelphia. Accordingly, the bankruptcy court ruled that service was defective.[6] Nevertheless, the bankruptcy court refused to set aside the foreclosure judgments and Sheriffs' sales because Knapper had not proven "that a constitutional defect in personal service, or a material defect is apparent on the face of the record." The court reasoned that a federal court can only provide such relief if a plaintiff "undertakes a method for service of process which is not reasonably designed to inform the defendant, . . . then there is a constitutional violation which may be asserted at almost any time." However, the bankruptcy court subsequently ruled that, given the information available to Bankers Trust at the relevant time, Bankers Trust used means which were "reasonably calculated to inform Mrs. Knapper of the two foreclosure actions." Accordingly, the court concluded that service "fell within constitutional standards," and the court denied relief. The court held that "even though [Knapper] . . . has demonstrated a defect in personal service of the two foreclosure complaints under state law, the nature of the defect,

_____

tenant moved once she learned of the eviction proceedings, but Knapper and her husband are living in the Gilbert Street Property.

[6]As explained below, under Pennsylvania civil procedure rules, methods of serving a complaint include handing a copy to an adult family member whom the defendant resides with at the defendant's residence.

coupled with her inaction,[7] prevents her now from obtaining relief from the foreclosure laws under Pennsylvania law in this forum."

Knapper appealed to the district court, which concluded that the bankruptcy court's finding that Knapper was residing in Virginia when service was attempted in Philadelphia was not clearly erroneous. The district court also agreed that the defect in service did not rise to the level of a constitutional violation. Moreover, the district court ruled that Knapper had waived her right to assert any issue of a defect in service because she waited until her fifth bankruptcy proceeding to raise it. Accordingly, the district court affirmed the bankruptcy court. This appeal followed.[8]

## III. DISCUSSION

---

[7]The court was referring to Knapper's failure to appear in state court to attempt to either strike the default foreclosure judgments or open them.

[8]Because the district court sat as an appellate court, our review of the district court's determination is plenary. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." *Id.* The bankruptcy court's factual findings may not be set aside unless they are clearly erroneous. *Id.* The bankruptcy court's legal determinations are reviewed under a plenary standard and its exercises of discretion for abuse thereof. *Id.*

10

Pennsylvania Rule of Civil Procedure 410(a) provides that "[i]n actions involving title to, interest in, . . . or liens upon real property, original process shall be served upon the defendant in the manner provided by Rule 400 *et seq*." This includes actions "at law to foreclose a mortgage upon any estate, leasehold or interest in land . . . ." Pa.R.Civ. P. 1411. In addition, Rule 402(a)(2)(I) provides that

> [o]riginal process may be served . . . by handing a copy . . . *at the residence of the defendant to an adult member of the family with whom he resides*; but if no adult member of the family is found, then to an adult person in charge of such residence. . . . (emphasis added).

Under Pennsylvania law, "residence" means actual residence, i.e., presence as an inhabitant in a given place. It does not mean constructive residence or domicile. *Robinson v. Robinson*, 67 A.2d 273, 275 (Pa. 1949).

As we have noted, the process server served both foreclosure complaints at the Gilbert Street property by handing them to a man he believed to be Knapper's husband. The process server attempted service there because the mortgage company believed that was Knapper's residence.[9] However, the bankruptcy court found that Knapper was actually a resident

---

[9]There is nothing in the record to suggest that Bankers Trust had any reason to believe that Gilbert Street was not Knapper's residence. *See* n.3, *supra*.

11

of Virginia and the district court held that that finding was not clearly erroneous.

On appeal Knapper argues that since service was not made at her "residence" as required by Rule 402(a)(2)(I), the state court did not have personal jurisdiction over her and, the two default judgments and the ensuing foreclosures and sheriffs' sales therefore denied her due process of law. Consequently, she contends that the default judgments, foreclosures and sheriffs' sales are void and the bankruptcy court erred in not vacating them.

Before we can address the substantive issue raised by Knapper, we must determine if the bankruptcy court had subject matter jurisdiction over Knapper's adversary proceeding against Bankers Trust. Knapper would obviously not challenge that court's subject matter jurisdiction over the merits of her own constitutional claim, and Bankers Trust failed to raise the issue in either the bankruptcy court or the district court. Neither of those courts inquired into their own subject matter jurisdiction either. Nevertheless, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a case under review." *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986) (citation and internal quotations omitted). Given the unique posture of this case, and the impact the requested relief would have on state court judgments, we must first examine the subject matter jurisdiction to consider Knapper's adversarial complaint.

As we have noted, Knapper never went into state court

12

to challenge the proceedings there, or to attempt to have the foreclosure judgments stricken or opened.[10] Instead, she has come to the bankruptcy court on four prior occasions attempting to stay foreclosure sales in state court. She has now ventured here a fifth time in an effort to have federal courts void the default judgments and Sheriff sales of state courts. In entertaining Knapper's adversarial action, the bankruptcy court observed:

> Challenges to state court foreclosure sales have been made previously in bankruptcy courts in this district without any suggestion that the court lacks the power to vacate such a sale if state law would so require.

The bankruptcy court then analyzed Pennsylvania law concerning service of process and notice requirements. It also discussed Pennsylvania's requirements for striking and opening judgments.[11]

---

[10] We realize that Knapper may have decided not to appear in state court because doing so may have resulted in a waiver of the defective service and resulted in her being subject to the jurisdiction of the state court. *See Commonwealth ex rel Schwartz v. Schwartz*, 380 A.2d 1299, 1301 n.1 ("[I]t has been held that a motion to open a judgment waives formal defects in service.") (citation omitted).

[11] Under Pennsylvania law, there are two ways to set aside a judgment; a motion to strike a judgment and a motion to

13

However, Knapper is not now attempting to either strike the judgments or open them under Pennsylvania law. Rather, she has mounted a constitutional challenge to a state court

> A petition to strike a judgment does not involve the discretion of the court. Instead, it acts as a demurrer to the record, and, as such, may be granted only when a fatal defect in the judgment appears on the face of the record. Therefore, to grant a petition to strike a judgment based on improper service, the court must be unable to find proper service, reviewing only the record as it existed when judgment is entered.

*Dubrey v. Izaguirre*, 685 A.2d 1391, 1393 (Pa. Super. 1996) (citations and internal quotations omitted). However, a motion to open judgment is "addressed to the sound discretion of the court." *Minetola v. Samcicio*, 160 A.2d 546, 547 (Pa. 1960). "[O]rdinarily, three factors must coalesce before a default judgment can be opened: (1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." *Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 416 A.2d 549, 551 (Pa. Super. 1979) (citations and internal quotations omitted).

14

judgment in federal court.[12]

The *Rooker-Feldman* doctrine prevents "inferior" federal courts from sitting as appellate courts for state court judgments, *see, e.g., Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y. and N.J. Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992).[13]

---

[12] *See* Knapper's Complaint at ¶ 20 ("Due process of law required that the Debtor receive proper service of the Complaints, and that the Defendant's judgments at issue were based on service which was invalid, and the judgments cannot stand as basis for the sheriffs' sale in question. The sales in question were therefore conducted in violation of 42 U.S.C. section 1983 and the 14th Amendment to the federal Constitution."); *see also* Knapper's Br. at 15 ("Since the state court did not obtain personal jurisdiction over the Debtor, a deprivation of the properties in issue occurred without the requisite due process of law."); Reply Br. at 1 ("[T]he instant proceeding was properly brought as a challenge to unconstitutional state court judgments, not as a petition to strike or open the judgments in state court.").

In pointing out that Knapper is not challenging the judgments under state law, we do not suggest that our jurisdictional analysis would be any different if she were trying to do so.

[13]The doctrine takes its name from two Supreme Court cases, viz., *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

15

The *Rooker-Feldman* doctrine arises from 28 U.S.C. § 1257 which states in relevant part that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." Since Congress has never conferred a similar power of review of the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions. . . .

[T]he *Rooker-Feldman* doctrine prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling.[14] Although § 1257 refers to orders and decrees of the highest state court, the *Rooker-Feldman* doctrine has been applied to final decisions of lower state courts.

Thus, a claim is barred by *Rooker-Feldman* under two circumstances; first, if the federal claim was

---

[14]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *Blake v. Papadakos*, 953 F.2d 68, 72 n.2 (3d Cir. 1992)(citation omitted). "[T]hrough the statutory writ of habeas corpus Congress has created a comprehensive system of federal collateral review of state court criminal judgments." *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000).

16

actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.[15]

*Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004). (citations,

---

[15] The Supreme Court recently elaborated upon the operation of *Rooker-Feldman* in, *Exxon Mobil v. Saudi Basic Indust., Corp.* There, the Court explained that "[t]he *Rooker-Feldman doctrine*[] . . . is confined to cases . . . brought by state-court losers complaining of . . . state court judgments rendered before the [federal] proceedings commenced and inviting [federal court] review and rejection of those judgments. *Rooker-Feldman* does not otherwise . . . allow federal courts to stay or dismiss proceedings in deference to state-court actions." 125 S. Ct. 1517, __ , (2005).

In his concurring opinion, our colleague, Judge Rosenn, relies upon the Full Faith and Credit statute, 28 U.S.C. § 1738 rather than the *Rooker-Feldman* doctrine. However, before invoking that statute, we first have an obligation to determine if there is subject matter jurisdiction for Knapper's federal claim. *See Bender v. Williamsport Area School District, supra.* We believe that *Rooker-Feldman* deprives federal courts of subject matter jurisdiction to review Knapper's claim.

internal quotations and brackets omitted).

Since Knapper's constitutional claim was never "actually litigated in state courts," *Rooker-Feldman* would only apply if her constitutional claim is "inextricably intertwined" with the state court adjudications.

> A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. . . . In other words, *Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.

*Walker*, 385 F.3d at 330 (citations, internal quotations and ellipses omitted).

Knapper's due process attack on the state court judgments asserts that the state lacked personal jurisdiction over her because of defective service of process. Knapper can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained. Therefore, she can not prevail on her federal claim without obtaining an order that "would negate the state court[s'] judgment[s]." Accordingly, Knapper's federal claim is inextricably intertwined with the state

18

adjudications and thus barred by *Rooker-Feldman*. [16]

Moreover, our analysis is not altered by the fact that Knapper's federal claim is cloaked in the guise of an adversary proceeding in bankruptcy court because *Rooker-Feldman* still applies. *See In re: Wilson (Baldino v. Wilson)*, 116 F.3d 87 (3d Cir. 1997). In *Wilson*, Wilson swore a criminal complaint against Baldino that was eventually dismissed. Thereafter, Baldino filed a civil suit in state court against Wilson asserting malicious prosecution. The state trial court entered summary judgment in favor of Wilson, and Baldino appealed. Before the case was argued, Wilson filed for Chapter 7 relief, thereby automatically staying Baldino's appeal.

Baldino then filed a motion for relief from the automatic stay in order to complete her appeal. However, the bankruptcy court denied her request reasoning that even if Baldino prevailed on her state court appeal, any judgment against Wilson would not necessarily be nondischargeable in the bankruptcy proceeding. The district court adopted the bankruptcy court's reasoning and affirmed the order denying Baldino's request for

---

[16] In *In Re: James*, 940 F.2d 46 (3d Cir. 1991), a state court judgment at issue was void because it violated the automatic stay and therefore subject matter jurisdiction was lacking. Here there was no violation of the automatic stay or other problem with the subject matter of the Pennsylvania judgment. As a result, the dicta discussion of Rooker-Feldman in *James* in the context of a void ab initio exception is not applicable. *See Schmitt v. Schmitt*, 324 F.3d 484 (7th Cir. 2003); *In Re: Ferren*, 203 F.3d 559 (8th Cir. 2000).

19

relief from the automatic stay.

On appeal, we reversed finding that the bankruptcy court's belief that any judgment Baldino obtained against Wilson would not necessarily be nondischargeable in bankruptcy was incorrect as a matter of law. 116 F.3d at 89-90. We then concluded "[t]he bankruptcy court is also prohibited from reviewing the state court's judgment by the *Rooker-Feldman* doctrine, which prohibits lower federal court's from sitting as effective courts of appeal for state court judgments." 116 F.3d at 90 (citations omitted).

Our analysis in *Wilson* is not unique. In *In re: Goetzman (Goetzman v. Agribank, FCB)*, 91 F.3d 1173 (8th Cir. 1996) a dispute arose as to the amount the Goetzmans owed under stipulations that were entered into as part of a plan of reorganization under Chapter 12. The Goetzmans sued in state court seeking specific performance of the stipulation and an order directing their mortgagee to accept a tendered payment as payment in full. The state courts eventually determined the amount the Goetzmans owed.

After the entry of final judgment in the state court and during the pendency of an appeal, the Goetzmans filed an adversary complaint in the bankruptcy court asking the bankruptcy court to determine how much they owed their mortgagee. The bankruptcy court assumed that it had jurisdiction, but dismissed the complaint on preclusion grounds based upon the state court judgment. The district court reversed, ruling that the bankruptcy court lacked subject matter jurisdiction under *Rooker-Feldman*. The court of appeals

20

affirmed holding:

> An examination of the Goetzmans' respective claims leads to the conclusion that the federal claims are inextricably intertwined with the state court decision. The heart of the state court proceedings was a determination of the amount the Goetzmans owed to [the mortgagee]. . . . . *it is apparent that what was really sought was a federal judgment that would change the state court result*. This attempted relief is exactly what is barred by the *Rooker-Feldman* doctrine.

91 F.3d at 1177 (emphasis added).

Here, Knapper's constitutional claim would just as surely "change the state court result," because the federal judgment she is seeking would reduce the state court judgments to nullities. That is precisely what *Rooker-Feldman* prohibits, and federal subject matter jurisdiction over Knapper's "bankruptcy" claim is therefore precluded by the *Rooker-Feldman* doctrine.

Knapper also asserts an alternative claim under 11 U.S.C. § 544(b)(1) which she argues does not require adjudication of her constitutional claim at all. *See* Knapper's Br. at 23.[17] That section of the Bankruptcy code provides, in relevant part:

---

[17] The alternative claim in her complaint is actually asserted under 11 U.S.C. §544(a), not § 544(b)(1). Compl. ¶ 28.

21

Except as provided in paragraph (2),[18] the trustee may avoid[19] any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). According to Knapper,

> [i]n a 544 action, relief is attainable by the Trustee in the event of any defect in a state court action, even one which could not be asserted by the debtor. . . . Therefore, the Plaintiffs are entitled to prevail under section 544 on the mere strength of a finding of a defect in the state court process for effecting service upon the Debtor, irrespective of whether a defect which rose to the constitutional level existed or whether "equities" which might be found to support the Defendant's position.

Knapper's Br. at 24. We assume Knapper means that she can obtain relief under § 544(b)(1) simply because service of the

---

[18]Relating to a transfer of a charitable contribution. 11 U.S.C. § 544(b)(2).

[19]Under 11 U.S.C. § 551, any transfer avoided under § 544 "is preserved for the benefit of the estate but only with respect to property of the estate."

foreclosure complaints was not made in strict conformity with the Pennsylvania Rules of Civil Procedure. However, she offers no authority for that proposition.

In any event, Knapper cannot use § 544(b)(1) to void the default judgments and sheriffs' sales. As the Historical and Statutory Notes to § 544 make clear, subsection (b) "gives the *trustee* the rights of actual unsecured creditors under applicable state law to void transfers." (emphasis added). "Section 544(b)(1) subrogates the *trustee* to the position of an unsecured creditor under state law to avoid a transfer of property by the debtor.") (emphasis added). Steven Walt, *Generosity in Bankruptcy: The New Place of Charitable Contributions in Fraudulent Conveyance Law*, 32 Loy. L.A. L. Rev. 1029, 1032 (1999). Knapper is not the trustee, she is the debtor. As we have mentioned, *see* n.3, *supra*, although the caption of Knapper's complaint lists the standing Chapter 13 trustee as a plaintiff, he did not participate in her adversary proceeding in any way. Section 544(b)(1) plainly gives the trustee the power to avoid certain transfers, however, Knapper has offered no authority to establish that it also confers that right upon the debtor under the circumstances here.[20] *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) (holding that the language "the trustee may" in section 506(c) of the Bankruptcy Code foreclosed the right of a

---

[20] Knapper does allege that she can stand in the shoes of the trustee to avoid a transfer under § 544(b)(1) pursuant to 11 U.S.C. §§ 522(h), (g)(1). *See In re Rice*, 126 B.R. 189, 192-193 (Bankr. E.D. Pa. 1991).

nontrustee to prosecute that action).

Knapper alleges that the sheriffs' sales are avoidable under § 544 because they "occurred in violation of 12 Pa.C.S. section 5105." Compl. ¶ 28. That statute, captioned "Transfers fraudulent as to present creditors," provides:

> A transfer made . . .by a debtor is fraudulent as to a creditor whose claim arose before the transfer . . .if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

12 PA. CONS. STAT. ANN. § 5105. Thus, it appears from the complaint that Knapper is alleging that the sheriffs' sales can be avoided because of fraudulent conveyances in violation of Pennsylvania law. However, there is no discussion of how the sheriff sales could constitute fraudulent conveyances in either her brief or reply brief.[21]

Knapper is not attempting to use § 544(b)(1) to avoid the default judgments and sheriffs' sales in order to recapture the

---

[21] In the bankruptcy court, Knapper argued that the sheriffs' sales were fraudulent conveyances because they yielded prices that differed from the actual fair market value of the real property. The bankruptcy court rejected that argument and Knapper has not raised it here.

24

two parcels of real estate for the benefit of creditors. Rather, she is attempting to use § 544(b)(1) to void the foreclosures and sheriffs' sales and have the real estate returned to her to the prejudice of creditors. However, a sheriff's sale pursuant to an order of court on a mortgage debt can not constitute a fraudulent transfer in violation of § 544(b)(1). Accordingly, we reject Knapper's attempt to seek refuge within the provisions of § 544(b)(1).[22]

---

[22] In doing so, we do not mean to suggest that *Rooker-Feldman* bars an action that is properly based on § 544(b)(1). For a discussion of the interaction of *Rooker-Feldman* and various sections of the Bankruptcy Code empowering federal courts to set aside state judgments *see In re: Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc). There, the court observed:

> In apparent contradiction to *Rooker-Feldman* theory, bankruptcy courts are empowered to avoid state judgments, *see, e.g.,* 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.,* 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328. By statute, a post-petition state judgment is not binding on the bankruptcy court to establish the amount of a debt for bankruptcy purposes.
>
> Thus, final judgments in state courts are not necessarily preclusive in United States bankruptcy courts. Indeed, the rule has long stood that a state court judgment entered in a case that falls within

25

# IV. CONCLUSION

For the reasons set forth above, we will reverse the district court's order and remand with instructions to dismiss the adversary complaint for lack of subject matter jurisdiction.

---

ROSENN, <u>Circuit Judge</u>, concurring.

I concur with the majority that Knapper's complaint should be dismissed. I write separately, however, because I believe this result is compelled by the basic legal principles of federal-state comity and full faith and credit, rather than the <u>Rooker-Feldman</u> doctrine relied upon by the majority.

Knapper having failed to answer the foreclosure complaints served upon her, the state court awarded default judgment against her. Pennsylvania law provides two distinct remedies for an aggrieved party to obtain relief from the entry of a default judgment: file a petition to strike the default

---

the federal court's exclusive jurisdiction is subject to collateral attack in the federal courts.

202 F.3d at 1079 (case citations and internal quotations omitted).

judgment or file a petition to open the default judgment. <u>Mother's Rest. Inc. v. Krystkiewicz</u>, 861 A.2d 327, 336 (Pa. Super. Ct. 2004). A petition to strike can only be granted if a fatal defect appears on the record, and a petition to open is granted only if it is filed timely, proffers a meritorious defense, and the court excuses petitioner's failure to appear or answer. <u>Id.</u> (quoting <u>Cintas Corp. v. Lee's Cleaning Servs., Inc.</u>, 700 A.2d 915, 918-19 (Pa. 1997)).

Here, Knapper did not attempt to prove there was a fatal defect on the face of the record at the time the judgment was entered, nor could she, because the return of service was complete. Nor did Knapper seek, promptly or otherwise, to open the judgment. Instead of availing herself of the complete remedy available in the state court to challenge the foreclosure judgment and the alleged defective service, Knapper now seeks the shelter of the federal bankruptcy court to void the foreclosure judgments.

Where, as here, a final judgment has been entered by the state court, the Full Faith and Credit statute, 28 U.S.C. § 1738, requires such judgment be accorded the same respect and finality in federal court it would receive in its state of origin. <u>McDonald v. City of West Branch</u>, 466 U.S. 284, 287 (1984). It is inappropriate, therefore, for the Bankruptcy Court to stand in judgment of the merits of the valid state court judgment. The only apparent exception to this rule of federal-state comity is where, unlike here, the judgment is void <u>ab</u> <u>initio</u>. <u>See</u> <u>e.g.</u>, 11 U.S.C. §§ 544 (allowing bankruptcy courts to invalidate judgments predicated upon fraudulent conveyances). Because the state court judgment against Knapper was valid and the

sheriff's sale of her properties was not fraudulent, Knapper, perforce, cannot attack the state court judgment at this stage.

This result is not altered by Knapper's attempt to cloak her claim as a constitutional challenge to the service of process. Courts must look beyond form to address the substance of a claim. Lewis v. Attorney General of U.S., 878 F.2d 714, 722 n. 20 (3d Cir. 1989) ("A pleading will be judged by its substance rather than according to its form or label . . . ."). Having failed to challenge the foreclosure judgments either before or after they became final in state court, Knapper is seeking, in effect, a federal judgment to overturn a valid state court judgment. However, given the sanctity accorded valid state court judgments by federal-state comity and the Full Faith and Credit statute, Knapper's appeal should be dismissed.