**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1212

_____

In re:  EILEEN T. ADAMS,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 1:22-cv-06256)
District Judge: Honorable Karen M. Williams

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 24, 2025

Before:  BIBAS, PHIPPS, and AMBRO, *Circuit Judges*


(Opinion filed: September 3, 2025)

David A. Kasen
KASEN & KASEN
1874 E Marlton Pike
Suite 3
Cherry Hill, NJ 08003

*Counsel for Appellant*

Barbara A. Fein
STERN LAVINTHAL & FRANKENBERG
103 Eisenhower Parkway
Suite 100
Roseland, NJ 07068


Joseph I. Foley
MCCABE WEISBERG & CONWAY
216 Haddon Avenue
Suite 201
Westmont, NJ 08108

James A. French, Esq.
MARKS O'NEILL O'BRIEN DOHERTY & KELLY
535 Route 38 East
Suite 501
Cherry Hill, NJ 08002

*Counsel for Appellee*

---

OPINION OF THE COURT

---

**AMBRO**, *Circuit Judge*

When the bank foreclosed the mortgage on their home, Eileen Adams and her husband fought back. They filed for bankruptcy again and again, hoping to use the protections of bankruptcy law to stave off a foreclosure sale. At the same time, they relitigated the foreclosure judgment in New Jersey

state court. Adams and her husband lost their state-court appeal, and the Supreme Court of New Jersey declined review. Then Adams filed for bankruptcy once more. This appeal comes from that case.

The Bankruptcy Court granted Nationstar Mortgage's motion to lift the bankruptcy protections so it could sell the house. Adams opposed that motion, making all the same arguments she had made in New Jersey state courts. The Bankruptcy Court ruled for Nationstar, so Adams appealed to the District Court. That Court, understanding Adams was rehashing the state-court litigation, affirmed the Bankruptcy Court's order and dismissed the appeal for lack of jurisdiction under the *Rooker-Feldman* doctrine.

We agree Adams loses, but not for that reason. Rather, it is because despite all their efforts, she and her husband have lost, finally and on the merits. We do have jurisdiction, and we exercise it to hold that her claims are precluded. Because "we may affirm on any ground supported by the record," *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116 (3d Cir. 2020), we affirm the Bankruptcy Court's order lifting the automatic stay and use this opportunity to offer guidance on the application of *Rooker-Feldman* in bankruptcy.

## I. BACKGROUND

The relevant facts are undisputed and fairly brief.

In 2008, Adams and her husband gave their New Jersey home to her father. The next year, the father borrowed $360,000 from AmTrust Bank, securing it with a mortgage against the home in favor of Mortgage Electronic Registration

Systems (MERS), AmTrust's nominee. Sadly, he died soon after, leaving the home back to Adams, who took it subject to the mortgage. Complicating matters further, AmTrust failed not long after that and fell into FDIC receivership. The New York Community Bank (NYCB) acquired substantially all of AmTrust's assets and liabilities, but the evidence is unclear, at best, whether Adams's mortgage was meant to be part of that transfer.

Either way, it was MERS, not NYCB, that assigned the mortgage to another lender, EverBank, in November 2013. EverBank recorded the assignment. Adams had defaulted on the mortgage just before the assignment, in August 2013, so EverBank filed a complaint of foreclosure in August 2014. Adams answered the complaint pro se. But she did not oppose EverBank's later motion for summary judgment, which the state trial court granted in October 2015. Not long after, EverBank assigned the mortgage to our Appellee, Nationstar Mortgage, but EverBank continued to litigate the foreclosure without a formal substitution of parties.

Even so, Nationstar, holding itself out as EverBank's servicer, supported EverBank's motion for an entry of final judgment, granted in March 2017. The same day, Adams and her husband filed for Chapter 7 bankruptcy, later receiving a discharge before the case was dismissed in September 2017. The year after, Adams filed a Chapter 13 petition, and that bankruptcy court granted her leave to challenge the state-court foreclosure judgment.

So she did. Over the next two years, Adams exhausted her state-court remedies: in 2019, the trial court denied her motion to reconsider the final judgment of foreclosure, ruling

that EverBank held the note and could foreclose the mortgage; the Appellate Division affirmed that order in 2020; and soon after, the Supreme Court of New Jersey denied her discretionary appeal.

Affirming the trial court's denial of reconsideration, the Appellate Division held that (1) under New Jersey law, either "possession of the note *or* an assignment of the mortgage that predated the original [foreclosure] complaint confer[s] standing" in a foreclosure action, and (2) even if somewhere along the chain of custody the mortgage or note were improperly assigned, Adams did not have standing to challenge that assignment. (emphasis added) (citations omitted).

Throughout the state-court proceedings, Adams and her husband argued EverBank could not foreclose the mortgage because it did not hold it—they believed it had been transferred to NYCB when it took over AmTrusts's assets and liabilities. For our purposes, we are satisfied that those questions, plus others concerning any other convoluted path of ownership or assignment the Adams mortgage might have taken, were litigated to a final judgment on the merits in the lengthy foreclosure proceedings.

In 2019, after the trial court denied her motion for reconsideration, Adams withdrew her Chapter 13 petition, but her husband filed a Chapter 13 petition in 2021, and she filed one of her own in 2022—all surely to fend off the impending foreclosure sale.

We are here as part of Adams's 2022 Chapter 13 case. Nationstar moved for in rem relief from the automatic stay, which the Bankruptcy Court granted. Adams appealed to the District Court. Throughout, she again challenged whether

EverBank (or Nationstar) had standing in the state-court foreclosure proceedings as a proper holder of the mortgage with the right to foreclose. But the District Court affirmed the Bankruptcy Court, then dismissed the appeal for lack of jurisdiction on *Rooker-Feldman* grounds, reasoning that Adams was asking the federal courts to void a previously entered state-court judgment.

Adams timely appealed in February 2024. Three months later, she and her husband paid more than $400,000 at the sheriff's foreclosure sale to buy back the house.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(b) and 1334(b), the District Court had jurisdiction under 28 U.S.C. § 158(a), and we have jurisdiction over the District Court's order under 28 U.S.C. §§ 158(d) and 1291.

Though this is an appeal of a District Court decision, we review the Bankruptcy Court's decision "unfettered" by the District Court ruling. *In re Gilbert*, 120 F.4th 114, 121 (3d Cir. 2024) (quotation omitted). In doing so, we review the Bankruptcy Court's decision to lift the stay for abuse of discretion. *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007). Its application of the *Rooker-Feldman* doctrine is a conclusion of law, which we review de novo. *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012).

## III. ANALYSIS

To resolve this case, we work through a brief refresher on the *Rooker-Feldman* doctrine, offer some observations on

6

the application of *Rooker-Feldman* in bankruptcy, and explain why preclusion, not *Rooker-Feldman*, prohibits Adams's claims.

### A. Rooker-Feldman and preclusion look similar at a glance, but they have distinct purposes and applications.

By its constitutional authority, Congress endows the district courts with jurisdiction. U.S. Const. art. III, § 1. Many of those provisions are well-worn and familiar. *See, e.g.*, 28 U.S.C. § 1331 (federal-question jurisdiction); § 1332 (diversity jurisdiction); § 1334 (bankruptcy jurisdiction). And through that same authority, Congress vests the Supreme Court, and the Supreme Court alone, with appellate jurisdiction over "[f]inal judgments or decrees" of state supreme courts. *Id.* § 1257.

As we will explain, *Rooker-Feldman* is triggered only when a plaintiff flouts that grant of appellate jurisdiction to the Supreme Court, not every time a litigant seeks a re-do of a state-court decision.

#### 1. The *Rooker-Feldman* doctrine enforces a limitation on federal appellate jurisdiction.

The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases policing the boundary between the original jurisdiction of the district courts and the appellate jurisdiction of the Supreme Court.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the petitioners had gone to federal district court to ask that an Indiana state-court judgment be "declared null and void" on

7

the ground that it was unconstitutional. *Id.* at 414–15. The District Court dismissed the suit as outside its jurisdiction. *Id.* at 415. The Supreme Court agreed, explaining that, by statute, "no court of the United States other than th[at] [C]ourt could entertain a proceeding to reverse or modify the judgment for errors of [constitutional] character." *Id.* at 416. Doing so "would be an exercise of appellate jurisdiction," but a district court's jurisdiction "is strictly original." *Id.*

Sixty years passed before the Supreme Court returned to this issue in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The federal plaintiffs there were aspiring lawyers who petitioned the D.C. Court of Appeals, that jurisdiction's highest court, to waive certain bar-admission requirements so that they could sit for the bar exam. *Id.* at 463. When that Court denied their petitions, they sued separately in federal district court to challenge the decision. *Id.* at 468–72. In both cases, the District Court dismissed the suit, reasoning, as did the District Court in *Rooker*, that an appeal of the D.C. high court's opinion could be heard only in the Supreme Court. *Id.* at 470, 472–73.

The Supreme Court agreed, to an extent. *Id.* at 486–87. It explained that some of the plaintiffs' allegations about their eligibility to sit for the bar exam—that the D.C. Court of Appeals had acted "arbitrarily and capriciously" and "unreasonably and discriminatorily" in denying their petitions—were "*inextricably intertwined*" with their challenge to that Court's judgment. *Id.* at 486–87 (emphasis added). Those allegations, in effect, sought a direct review of the D.C. Court of Appeals' judgment, an appeal that could be taken only in the Supreme Court. *Id.* at 487. But the *Feldman* Court also ruled that the plaintiffs' "general attack on the

constitutionality" of the bar-admission requirements could proceed, as through that challenge they were not seeking "review of a final state court judgment in a particular case." *Id.* at 482, 486–87. Complicating matters, in a footnote, the Court explained that a district court would still lack jurisdiction when any "constitutional claims presented . . . are *inextricably intertwined* with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar." *Id.* at 482 n.16 (emphasis added).

Years passed, and mischief ensued as "the lower courts" "[v]ariously interpreted" the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state court." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 283 (2005). The decision reviewed in *Exxon Mobil* was one of our own, in which we ruled that the entry of a state-court verdict for ExxonMobil barred a federal district court's jurisdiction over parallel proceedings "because ExxonMobil's claims ha[d] already been litigated in state court." *Id.* at 290 (quotation omitted). We had reasoned that should the federal suit proceed, it could have the effect of "invalidat[ing] the state-court judgment, the very situation . . . contemplated by *Rooker-Feldman*'s 'inextricably intertwined' bar." *Id.* at 291 (cleaned up).

The Supreme Court reversed, explaining we had misapplied *Rooker-Feldman*, as "federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.* at 293. True, doctrines of "[c]omity or abstention" may "permit or require the federal court to stay or dismiss the federal action in favor of" pendent

9

"state-court litigation," *id.* at 292, and "preclusion law"—much more on that below—may "govern[]" the federal proceedings "once the state-court adjudication is complete," *id.* at 293. But the Court issued a forceful reminder. The *Rooker-Feldman* doctrine is "confined" to a limited set of cases: those "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

Today, in light of the doctrine's development, we too emphasize that *Rooker-Feldman* captures only a simple, if not elusive, rule of federal jurisdiction. The certiorari statute, 28 U.S.C. § 1257, means what it says: an action that is, or is in effect, an appeal of a state-court judgment may not be lodged in any federal court but the Supreme Court.[1] This narrow rule thus has narrow application, and it does not "supersed[e] the ordinary application of preclusion law" when a plaintiff relitigates a matter decided in another forum. *Exxon Mobil*, 544 U.S. at 281. We turn there next.

---

[1] To be sure, a common manner of challenging a state-court judgment is through federal habeas proceedings. But that is a collateral attack, not the kind of direct appeal barred by the *Rooker-Feldman* doctrine. *Wall v. Kholi*, 562 U.S. 545, 552 (2011) ("We have previously described a variety of proceedings as 'collateral,' and all of these proceedings share the characteristic that we have identified, *i.e.*, they stand apart from the process of direct review. For example, our cases make it clear that habeas corpus is a form of collateral review.").

**2. Preclusion, not *Rooker-Feldman*, is what typically prohibits a plaintiff's efforts to have her claims relitigated.**

Of course, the kind of case that triggers *Rooker-Feldman* necessarily involves a plaintiff who wants another go at it. Unhappy with her state-court results, she comes to the federal district court to try again. But imagine a legal system in which that were a winning strategy: If you whiff in state court, take your mulligan and come to federal court for another swing. State-court judgments would be near-worthless. To ensure those judgments receive the full faith and credit promised by the Constitution, art. IV, § 1, and to safeguard the efficiency and finality of litigation, we apply principles of preclusion.

Preclusion comes in two kinds: claim and issue. As both commonly prohibit the relitigation of claims and issues previously decided, they are sometimes together referred to as res judicata—that is, a matter already decided. *Taylor v. Sturgell*, 553 U.S. 880, 891–92 (2008). "Theoreticians of [procedure] have enjoyed countless hours delighting in the intricate rules of res judicata," or preclusion. 18 *Wright & Miller's Federal Practice & Procedure* § 4401 (3d ed. 2025).[2] For our purposes, it suffices to say just a few things.

---

[2] Confusingly, "res judicata" is used to refer to both the pair of claim and issue preclusion *and* sometimes claim preclusion alone. *United States v. Weiss*, 52 F.4th 546, 551 n.4 (3d Cir. 2022). We use "res judicata" here as the catch-all term for both kinds of preclusion.

11

"Under the doctrine of claim preclusion," a prior "final judgment forecloses 'successive litigation of the very same claim.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). A hypothetical will illustrate. Allison sues Bob in state court, claiming his reckless driving caused her injuries when their cars collided. After a bench trial, the state-court judge rules for Bob. If Allsion were to then go to another court—say, federal district court—to sue Bob again for the accident, claim preclusion would apply to bar her lawsuit.

Issue preclusion, on the other hand, "bars 'successive litigation of an issue of fact or law'" that was "'actually litigated[,] resolved in a valid court determination[, and] essential to th[at] prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748–49). Back to our hypothetical. In that state-court trial, Bob countersued Allison, claiming *she* was driving recklessly, not him. And the judge, when ruling for Bob, found that she was. Afterward, Allison's car insurer cancels her policy. She sues to restore coverage, arguing she was not driving recklessly—that it was a true accident. Issue preclusion prohibits her from making that argument, because the legal issue of Allison's recklessness was essential to the judgment for Bob and was actually litigated—meaning resolved on the merits, not dismissed on some procedural ground—in state court.[3]

---

[3] Careful readers will spot that Allison was a party to the prior state-court action, avoiding any impermissible nonmutual issue preclusion. In the interest of simplicity, we do not wade into those waters.

Given these examples, it is easy to imagine how a matter barred by preclusion—a suit in district court, for example, that attempts to relitigate a prior state-court claim—looks a lot like something that might offend *Rooker-Feldman*. In all instances, a litigant comes to federal court to try again. But "*Rooker-Feldman* is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam). The doctrine does not "supersed[e] the ordinary application of preclusion law under" principles of full faith and credit, which, as codified at 28 U.S.C. § 1738, require federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Exxon Mobil*, 544 U.S. at 283, 293 (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)). So it follows that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter [precluded because it was] previously litigated in state court." *Id.* at 293. As a jurisdictional doctrine, *Rooker-Feldman* requires we ask whether the plaintiff has a permissible reason—a valid jurisdictional ground—to be in district court at all.

Put another way, preclusion stops a litigant from taking another bite at the apple. But *Rooker-Feldman,* to extend the metaphor, tells a would-be plaintiff she may lodge her complaints about the state-court produce only in the Supreme Court, not district court. Though the reasons why differ, both doctrines deny the fruit of her efforts.

### B. Rooker-Feldman applies the same in bankruptcy.

"[B]ankruptcy is different" from ordinary "civil litigation," because "[a] bankruptcy case [is] an aggregation of individual controversies." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (cleaned up). Though 28 U.S.C. § 1334 "vests broad primary jurisdiction over bankruptcy proceedings in the [d]istrict [c]ourts," quite "routinely" those courts "refer bankruptcy matters falling within their jurisdiction to the [b]ankruptcy [c]ourts under 28 U.S.C. § 157(a)." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (quotation omitted). The bankruptcy courts, in turn, apply Title 11's panoply of procedural and substantive powers to resolve bankruptcy cases.

"The cases are unanimous that as a general matter *Rooker-Feldman* is applicable in bankruptcy courts." 1 Collier on Bankruptcy ¶ 3.02 (16th ed. 2025) (collecting cases). This makes good sense, as bankruptcy courts exercise federal jurisdiction. But in an "apparent contradiction to *Rooker-Feldman*," those "bankruptcy courts are empowered to avoid state judgments, *see, e.g.*, 11 U.S.C. §§ 544, 547, 548, 549; to modify them, *see, e.g.*, 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.*, 11 U.S.C. §§ 727, 1141, 1328." *In re Knapper*, 407 F.3d 573, 583 n.22 (3d Cir. 2005) (quoting *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc)).

Despite this "apparent contradiction," appearances are not what they seem. True enough, when parties come to the bankruptcy court to "restructur[e] . . . debtor-creditor relations"—the purpose "at the core of the federal bankruptcy power"—state-court judgments are swept into the dealings. *Halper*, 164 F.3d at 835–36 (quotation omitted). Creditors and

14

debtors alike, all harnessing the substantive powers of the Bankruptcy Code, may assert claims that "den[y] a legal conclusion that a state court has reached"—the scope of a lien, the amount of a judgment, or, as Adams here, the validity of a foreclosure. *Exxon Mobil*, 544 U.S. at 293 (quotation omitted). But those bankruptcy-court powers over state-court judgments are not based on separate invocations of jurisdiction that violate *Rooker-Feldman*. Each, if properly asserted, falls under the grant of bankruptcy court jurisdiction in 28 U.S.C. § 1334. And each, again if properly asserted, lays claim to some independent bankruptcy-court power contained in Title 11.

Thus, in bankruptcy, *Rooker-Feldman* applies only when two additional conditions are met: (a) procedurally, the claim is alleged as part of an adversary proceeding (*i.e.*, a complaint under Federal Rule of Bankruptcy Procedure 7003); and (b) the federal bankruptcy plaintiff's claim, even if "one that denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party," is not otherwise "independent" of her state-court claims. *Exxon Mobil*, 544 U.S. at 293 (quotation omitted).

As an example, consider our decision in *In re Philadelphia Entertainment & Development Partners*, 879 F.3d 492 (3d Cir. 2018). In 2006, Pennsylvania awarded a slot machine license to a casino partnership in exchange for a $50 million fee. When the partnership failed to meet the remaining licensing requirements, the Commonwealth revoked the license, requiring the partnership to transfer it back. The partners appealed that decision fully through the Supreme Court of Pennsylvania, where they lost. *Id.* at 494–95. Left with plans for a casino but no slot machines, the partnership instead chose a new venture: Chapter 11 bankruptcy. *Id.* at 495.

There, the trustee for the debtor partnership filed an adversary complaint against the Commonwealth, seeking—under the applicable provisions of the Bankruptcy Code—to avoid the transfer of the license to the Commonwealth and claw back its $50 million value into the estate. *Id.* at 495–96. As relevant here, the Bankruptcy Court, later affirmed by the District Court, dismissed several counts of the avoidance action as barred by *Rooker-Feldman*. *Id.* at 497–98.

We reversed. As we explained, "[b]y asking the Bankruptcy Court to find that the license revocation was an avoidable fraudulent transfer, the Trustee did not invite that Court to 'review and reject' the [state-court] revocation order." *Id.* at 500. The issue presented to the Bankruptcy Court by the avoidance action was not the "bona fides" of the state-court judgment affirming the revocation, but "whether that revocation, which occurred because of valid state proceedings, could nonetheless be avoided under the Bankruptcy Code." *Id.* at 501. No matter the "overlapping legal issues" between the state-court ligation and the avoidance action—the "fraudulent transfer claim in the Bankruptcy Court was independent" of the claims "previously advanced in the state court." *Id.* at 501–02.

We endorse this focus on the independence of a litigant's claims as the more precise reading of *Exxon Mobil*, which rejected our reliance on what we once called *Rooker-Feldman*'s "'inextricably intertwined' bar." 544 U.S. at 291 (quotation omitted). We defined "inextricably intertwined" for *Rooker-Feldman* purposes to "mean[] that federal relief can only be predicated upon a conviction that the state court was wrong." *E.g.*, *Knapper*, 407 F.3d at 580 (quoting *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir.2004)). We hope that by now we have explained why this definition impermissibly blurs the

16

lines between *Rooker-Feldman* and preclusion. To repeat, a lower federal court may not refuse to "exercis[e] subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil*, 544 U.S. at 293. Those attempts, no doubt animated by a party's belief "that the state court was wrong," *Knapper*, 407 F.3d at 580 (quoting *Walker*, 385 F.3d at 329), nonetheless require us to exercise "jurisdiction and [apply] state law [to] determin[e] whether the defendant prevails under principles of preclusion," *Exxon Mobil*, 544 U.S. at 293 (quotation omitted).[4]

---

[4] Along with *Knapper*, our 2009 decision in *In re Madera*, 586 F.3d 228 (3d Cir. 2009), applying *Rooker-Feldman* to dismiss a debtor's claims because success for the debtor "in the federal courts would prevent the [state court] from enforcing its order to foreclose the mortgage," *id.* at 232, was decided without the benefit of *Great Western Mining & Mineral Company v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). In *Great Western Mining*, through the incisive majority opinion by our colleague Judge Fuentes, we refined—and narrowed—our view of the doctrine after *Exxon Mobil*. We explained at length that a federal plaintiff who brings a claim "independent" of a state-court judgment does not defy *Rooker-Feldman*, even if the plaintiff seeks relief that would somehow frustrate a state-court judgment. *Id.* at 163–73. Because that kind of "independent" claim does not invite a review of the state-court judgment, but asserts a claim premised on "some other source of injury," it does not pose the jurisdictional problems *Rooker-Feldman* guards against. *Id.* at 167–68 (quotation omitted).

**C.** *Rooker-Feldman* **does not prohibit jurisdiction over Adams's claims, but they are precluded under New Jersey law.**

Because Adams is not a federal plaintiff, *Rooker-Feldman* does not apply to bar jurisdiction. We instead rule that Adams's claims are precluded.

At first look, Adams's claims would seem to fall within *Rooker-Feldman*'s ambit. No doubt she has, in reality, "repaired to federal court to undo the [New Jersey] judgment in [Nationstar's] favor." *Id.* at 293. Before us, she disputes the application of *Rooker-Feldman* but otherwise relitigates the state-court foreclosure proceedings, claiming the whole case was based on a "big lie [that] was adopted by the Bankruptcy Court and the District Court." Opening Br. 19.

But Adams is no *Rooker-Feldman* plaintiff. She is not even a movant. Nationstar held a foreclosure judgment in its favor. That makes it a "party in interest" to Adams's bankruptcy estate, as a holder of a judgment against the estate's property, the house. 11 U.S.C. §§ 362(a)(2), 362(d). So Nationstar moved for relief from the automatic stay. *Id.* § 362(d). Opposing Nationstar's motion, Adams argued—as she does here—that the New Jersey judgment was wrongly decided, as neither Nationstar nor EverBank held the mortgage.

That claim is precluded.[5] We give the New Jersey foreclosure judgment the same preclusive force New Jersey

---

[5] Wrapped up in this claim are several issues—the validity of the mortgage's assignment, the banks' standing to foreclose,

18

courts would. 28 U.S.C. § 1738. Thus, applying New Jersey law, her claims are precluded if the foreclosure judgment was "valid, final, and on the merits"; (2) the parties in the later action are identical to, or in privity with, those in the prior action; and (3) her claim in this "later action" stems from the "same transaction or occurrence as the claim in the earlier" foreclosure action. *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (1991).

In that analytical context, our conclusion follows easily. The state-court foreclosure judgment was valid, final, and reached the merits. As EverBank could litigate the foreclosure without substituting Nationstar, those parties are in privity, if not considered the same. N.J. Rules of Court 4:34-3. And Adams's claims here are nothing but reruns of her claims in state court. She has even admitted so. App. 290 (Adams's counsel, arguing against Nationstar's motion to lift the stay before the Bankruptcy Court: "It is true that we're attacking the foreclosure judgment."). Bound by the judgment for EverBank, Adams is precluded from any attempt to secure a different outcome in our Court.

\* \* \*

The *Rooker-Feldman* doctrine is narrow, and it applies only when a federal plaintiff improperly invokes the jurisdiction of a district court to appeal—in fact or in effect—a state-court judgment. That is not the case here. Eileen Adams is not a plaintiff, but she has once more tried to litigate the validity of the state-court foreclosure judgment against her

and on—that are issue precluded. Claim preclusion is enough to defeat Adams's efforts here.

19

home. Even though her claims are not barred by *Rooker-Feldman*, they are precluded under New Jersey law. So we affirm the District Court's order insofar as it affirmed the Bankruptcy Court's granting of Nationstar's motion to lift the automatic stay.