PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1954
_____

In re:  PHILADELPHIA ENTERTAINMENT &
DEVELOPMENT PARTNERS, LP
d/b/a FOXWOODS CASINO PHILADELPHIA,

Debtor

PHILADELPHIA ENTERTAINMENT &
DEVELOPMENT PARTNERS, LP
d/b/a FOXWOODS CASINO PHILADELPHIA

v.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE;
COMMONWEALTH OF PENNSYLVANIA

PERSIL MANGEUR LLC, in its capacity as the trustee of the
Liquidation Trust for the estate of debtor
Philadelphia Entertainment & Development Partners, LP
d/b/a Foxwoods Casino Philadelphia,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-16-cv-01992)
Honorable Joseph F. Leeson, Junior, District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 12, 2017

BEFORE:  CHAGARES, RESTREPO, and GREENBERG,
<u>Circuit</u> <u>Judges</u>

(Filed: January 11, 2018)
_____

Jared D. Bayer
Stephen A. Cozen
F. Warren Jacoby
Cozen O'Connor
1650 Market Street
One Liberty Place, Suite 2800
Philadelphia, PA 19103

Jennifer M. McHugh
Cozen O'Connor
200 Four Falls Corporate Center
P.O. Box 800, Suite 400
West Conshohocken, PA 19428

   <u>Attorneys for Appellant</u>

Richard A. Barkasy
Albert S. Dandridge, III
Bruce P. Merenstein
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103

    Attorneys for Appellees

_____

OPINION

_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

Persil Mangeur LLC, ("Persil"), the Trustee of the Liquidation Trust established in debtor Philadelphia Entertainment and Development Partners, LP's ("PEDP"), Chapter 11 plan, appeals from a District Court order affirming a Bankruptcy Court order dismissing PEDP's adversary complaint against the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania Department of Revenue (together "Commonwealth").  We trace this case to 2006 when the Pennsylvania Gaming Control Board (the "Board") awarded a slot machine license to PEDP, which paid a $50 million fee to the Commonwealth for the license.  The Board, however, eventually revoked the license when PEDP failed to meet certain of its requirements for its maintenance.  PEDP unsuccessfully

3

appealed from the revocation order to the Pennsylvania Commonwealth Court, following which the Supreme Court of Pennsylvania denied PEDP's application to review that decision.

After the Pennsylvania courts upheld the revocation, thereby exhausting PEDP's remedies through state procedures to challenge the revocation, it filed a petition in bankruptcy. During the bankruptcy proceedings, it brought an adversary action against the Commonwealth alleging that the license revocation should be avoided because it was a fraudulent transfer under §§ 544 and 548 of the Bankruptcy Code and under Pennsylvania law. Citing the Rooker-Feldman doctrine, the Bankruptcy Court concluded that it lacked subject matter jurisdiction over the fraudulent transfer claims in light of the proceedings in the state courts which had upheld the revocation order. By that time Persil had been appointed Trustee, and it appealed to the District Court which affirmed the Bankruptcy Court order. Persil then appealed to this Court. We will reverse because the Bankruptcy Court erred when it held that the Rooker-Feldman doctrine barred its review of the fraudulent transfer claims. We are satisfied that in a review of those claims the Bankruptcy Court did not need to review or reject the Commonwealth Court's judgment. We, however, do not reach a conclusion on the question of whether any of PEDP's fraudulent transfer claims are meritorious, so our opinion should not be overread as we only address the Rooker-Feldman issue.

## II. BACKGROUND

The Pennsylvania Horse Racing Development and Gaming Act (the "Gaming Act"), provides for slot machine

4

gaming in Pennsylvania. 4 Pa. Cons. Stat. § 1102 (2010). The Gaming Act authorizes the Board to issue two slot machine licenses for standalone gaming facilities in Philadelphia. Id. § 1304(b). As a condition for being granted a license, an applicant must pay a one-time license fee of $50 million to the Commonwealth. Id. § 1209(a).

In December 2006, the Board awarded a slot machine license to PEDP. App'x 107 ¶ 14. PEDP paid the $50 million fee in October 2007, and the Board issued the license the next year. App'x 108 ¶¶ 19-22. The Board required PEDP to open its facility and commence operations by May 2009, but PEDP did not meet this deadline and has never opened the facility. App'x 109 ¶¶ 23-24. Nevertheless, the Board extended the deadline for opening the facility to May 2011, provided that PEDP satisfy nine conditions that the Board required it to meet at preset dates during the extension period, App'x 109-10 ¶¶ 25-29. These conditions included requirements that PEDP submit financial and architectural documents and development plans to the Board. App'x 110 ¶ 29. PEDP did not satisfy these conditions and unsuccessfully sought another extension to satisfy the requirements for the license. App'x 110-12 ¶¶ 30-41. In December 2010, the Board entered an order revoking PEDP's slot machine license by reason of PEDP's failure to follow Board orders and demonstrate its financial suitability. App'x 113 ¶ 42, 116 ¶ 60.

PEDP appealed from the revocation order to the Commonwealth Court of Pennsylvania. PEDP argued in the Commonwealth Court that the Board applied the wrong test for determining its financial suitability, the financial suitability requirements were unconstitutionally vague, and the Board denied PEDP due process of law for several reasons, one of

5

which was a contention that forfeiture of the license for which PEDP had paid a $50 million fee was an excessive sanction to impose by reason of its failures to satisfy the Board's requirements. App'x 851-52, 914-15. The Commonwealth Court rejected PEDP's appeal and affirmed the Board's revocation decision as it concluded that the Board had authority under the Gaming Act to revoke the license, the Board used the appropriate test under the Gaming Act in reaching its decision, the requirements to show financial suitability were clear, and the Board afforded PEDP due process because, among other things, the revocation was not an unreasonably harsh sanction for PEDP's failure to satisfy the conditions for the license. Phila. Entm't & Dev. Partners, LP v. Pa. Gaming Control Bd., 34 A.3d 261, 268-80 (Pa. Commw. Ct. 2011). The Supreme Court of Pennsylvania denied PEDP's petition for allowance of appeal from the Commonwealth Court's decision on March 29, 2012. Phila. Entm't & Dev. Partners, LP v. Pa. Gaming Control Bd., 41 A.3d 852 (Pa. 2012).

Two years later, on March 31, 2014, PEDP filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code, App'x 17, and then, two months after it filed the petition, it filed its adversary complaint against the Commonwealth. App'x 103. This appeal now before us centers on counts Two to Four of the adversary complaint. In Counts Two and Three, PEDP asserted claims to avoid what it claimed was a constructively fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 544(b) and under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. §§ 5101 et seq.[1] Specifically, PEDP claimed that the "revocation of the

---

[1] Sections 548(a)(1)(B) and 544(b) deal with avoidance of fraudulent transfers. Section 548(a)(1)(B) provides that

6

License was a transfer for which [PEDP] received no value from the Commonwealth. . . ." App'x 123 ¶ 97. Thus, in Count Four, PEDP sought recovery of what it claimed was a fraudulent transfer under 11 U.S.C. §§ 550 and 551. PEDP sought to avoid the transfer and recover payment from the Commonwealth of the full value of the transfer, which PEDP estimated to be $50 million, the amount of the license fee it had paid. App'x 123 ¶¶

---

[t]he Trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily …

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(B).

Section 544(b) permits a trustee to pursue avoidance claims under state law—here, the PUFTA. 11 U.S.C. § 544(b). The main constructive fraud provisions of the PUFTA, §§ 5104 and 5105, are similar to constructive fraud under § 548(a)(1)(B), except that the PUFTA increases the statutory "look back" period from two years to four years. 12 Pa. Cons. Stat. § 5109.

96-104, 125 ¶ 114.

PEDP also asserted separate claims for turnover of the amount of the license fee that the Commonwealth did not return (Count One), for an unconstitutional taking (Count Five), and on theories that the Commonwealth had been unjustly enriched and PEDP was entitled to a recovery on the basis of promissory estoppel (Counts Six and Seven). We, however, are not concerned with counts One, Five, Six, and Seven on this appeal as their dismissal is not presently challenged.

In July 2014, the Bankruptcy Court confirmed PEDP's liquidation plan, which called for the creation of a liquidation trust supervised by Persil. App'x 17-18. Persil as Trustee succeeded to all claims belonging to PEDP. App'x 3; First Modified Chapter 11 Liquidation Plan 21-22, In re Phila. Entm't & Dev. Partners, LP, No. 14-12482, ECF No. 88 (Bankr. E.D. Pa. May 27, 2014).

On April 8, 2016, the Bankruptcy Court dismissed the adversary complaint. In re Phila. Entm't & Dev. Partners, LP, 549 B.R. 103, 110-11 (Bankr. E.D. Pa. 2016). The Bankruptcy Court found that the Rooker-Feldman doctrine divested it of subject matter jurisdiction to consider a claim for the avoidance of the license revocation. Id. at 111, 139. It stated,

> the Rooker-Feldman Doctrine precludes the Trustee from attempting to challenge the prepetition revocation of the License. The Debtor lost in state court. To the extent the Trustee alleges that some interest in the License inured to the benefit of the estate, the Trustee would be complaining of injuries caused by the Revocation Order that was subsequently confirmed by the Commonwealth

8

Opinion. The Revocation Order and the Commonwealth Opinion were entered prepetition. Finally, if this Court was to determine that the Debtor held an interest in the License or some right to be compensated for its value, this Court would necessarily be required to review the merits of the earlier state court decisions. Accordingly . . . this Court is thereby prevented from addressing or otherwise modifying the prepetition revocation of the Debtor's interest in the License.

Id. at 139 (emphasis removed).

The Bankruptcy Court then addressed the Trustee's claim for compensation for the value of the license. The Bankruptcy Court stated that a claim to undo the revocation and to obtain compensation for the revocation are "opposite sides of the same coin"; that is, the right to be compensated for the value of the license is the "functional equivalent" of the right to retain the license, a conclusion that led the Court to hold that the Rooker-Feldman doctrine barred any claim for the value of the license. Id. at 140-41.

The Bankruptcy Court also addressed the fraudulent transfer claim by treating the relevant transfer as the Commonwealth's failure to refund the license fee after the revocation rather than the revocation of the license. Id. at 141-42. The Bankruptcy Court declined to decide whether the Rooker-Feldman doctrine barred this alternative reading of the claim because the Commonwealth Court had not explicitly addressed the question of whether PEDP was entitled to a refund of the license fee upon the license revocation. Id. at 142. But what the Bankruptcy Court did hold was that the refund theory failed to state a claim under §§ 544 or 548 of the Bankruptcy

9

Code. It concluded that PEDP's payment of the license fee to the Board in October 2007 was not an actionable transfer because PEDP made the payment outside the statutory lookback periods under § 548 and the PUFTA, and the Commonwealth's alleged failure to pay a refund after the revocation was not an actionable omission because nonpayment of property cannot be a transfer of property. Id. at 152-54. The Bankruptcy Court also dismissed the §§ 550 and 551 claims for recovery of the transfer because it believed that the adversary complaint failed to plead any valid avoidance claim under §§ 548 or 544. Id. at 155.[2]

---

[2] The Commonwealth raised an Eleventh Amendment defense in its pleadings which the Bankruptcy Court upheld with respect to state law claims that PEDP advanced in its adversary complaint but with which we are not concerned on this appeal. On the other hand the Court did not consider that defense with respect to the fraudulent transfer claims that we do address. The Commonwealth does not advance an Eleventh Amendment issue on this appeal even though the Eleventh Amendment concerns subject matter jurisdiction as the Commonwealth believes that, inasmuch as the Bankruptcy Court did not consider the defense, the issue had not been preserved for presentation to this Court. While parties cannot by consent vest a court with subject matter jurisdiction and the Eleventh Amendment is jurisdictional, see Blanciak v. Allegheny Ludlam Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996), we will not address an Eleventh Amendment issue on this appeal as the Commonwealth does not raise it and a party may waive an Eleventh Amendment defense. See In re Hechinger Inv. Corp. v. Hechinger Liquidation Tr., 335 F.3d 243, 249 (3d Cir. 1996). We, however, express no opinion on whether the Commonwealth should be deemed to have waived a possible Eleventh Amendment defense on the remand that will

PEDP appealed, but the District Court affirmed. It held that the Bankruptcy Court correctly characterized the fraudulent transfer claims "as a challenge to the legitimacy of the revocation of the Debtor's license," and not, as the Trustee claimed, a "challenge only [to] the Commonwealth's failure to return the value of the license after its revocation." In re Phila. Entm't & Dev. Partners, LP, 569 B.R. 394, 399 (E.D. Pa. 2017). Based on that reasoning, the District Court adopted the Bankruptcy Court's Rooker-Feldman doctrine conclusions. Id. at 399-400.

The District Court also held that the Bankruptcy Court correctly dismissed on the merits any part of the fraudulent transfer claim that application of the Rooker-Feldman doctrine did not bar. Id. at 400-01. It held that the Bankruptcy Court correctly determined that PEDP's only two transfers were the license fee payment in 2007 (the claim to repayment that was time-barred) and the loss of the license which it found occurred in 2012 (which claim the Rooker-Feldman doctrine barred from review). Id. at 401. The District Court agreed with the Bankruptcy Court that there had not been a "transfer" based on the Commonwealth's failure to pay PEDP $50 million after the revocation because nonpayment did not constitute a disposing of or parting with property. Id. The District Court entered its judgment on March 28, 2017. The Trustee timely appealed.

III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

---

follow the proceedings in this Court.

11

The Bankruptcy Court had jurisdiction to hear the adversary proceeding under 28 U.S.C. §§ 157(b) and 1334(b). The District Court had jurisdiction to hear the appeal from the Bankruptcy Court's order under 28 U.S.C. § 158(a). We have jurisdiction of the appeal from the District Court's order under 28 U.S.C. §§ 158(d) and 1291. We review the Bankruptcy Court's legal determinations de novo. In re Trans World Airlines, Inc., 145 F.3d 124, 130-31 (3d Cir. 1998).

## IV. DISCUSSION

On appeal, the Trustee challenges the Bankruptcy and District Courts' conclusions that the Rooker-Feldman doctrine barred their review of PEDP's fraudulent transfer claims. The Rooker-Feldman doctrine deprives federal district and bankruptcy courts of jurisdiction "over suits that are essentially appeals from state-court judgments. . . ." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010); see In re Madera, 586 F.3d 228, 232 (3d Cir. 2009). There is some tension between the application of the Rooker-Feldman doctrine and the prosecution of avoidance claims under the Bankruptcy Code as an avoidance of a claim seems to authorize what the Rooker-Feldman doctrine prohibits—appellate review of state court judgments by federal courts other than the Supreme Court. See In re Knapper, 407 F.3d 573, 583 n.22 (3d Cir. 2005) ("In apparent contradiction to Rooker-Feldman theory, bankruptcy courts are empowered to avoid state judgments. . . .") (quoting In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc)). But we have noted that the Rooker-Feldman doctrine does not necessarily bar actions that properly are based on the Bankruptcy Code's fraudulent transfer statutes.

See id. (rejecting "suggest[ion] that Rooker-Feldman bars an action that is properly based on § 544(b)(1)"). We must decide, then, whether the federal courts had jurisdiction to review the Trustee's fraudulent transfer claims or whether the Rooker-Feldman doctrine barred them from doing so.

Our initial task is to identify the transfer on which the Trustee predicates its §§ 548 and 544 fraudulent transfer claims. The Bankruptcy Court identified three possible transfers: the payment of the license fee, the loss of the license, and the Commonwealth's failure to refund the license fee. But the Trustee contends that the only operative transfer for which it seeks relief is from the loss of the license. Trustee's Opening Br. 26 (identifying PEDP's "transfer of the slot machine license upon revocation" as "the transfer on which the Fraudulent Transfer Claims are based").

The Trustee's position is consistent with the allegations in the adversary complaint that identify the license revocation as the operative transfer. App'x 123 ¶ 97.[3] In particular, the

---

[3] Much of the Bankruptcy and District Courts' conclusions regarding the two other "transfers" accordingly have no bearing on this appeal. We appreciate why the Bankruptcy Court had difficulty pinning down with precision the fraudulent transfer theory of which the Trustee complains. While the adversary complaint is relatively clear in asserting that the relevant transfer was the revocation, the Trustee's briefs and oral arguments before the Bankruptcy and District Courts often conflated the claim with other claims in the adversary complaint that sought a refund of the license fee. See, e.g., App'x 1165 (stating at oral argument that "any fair reading of Count One, Two, Three, and Four is that what we are asking for is a return of the license fee

13

Trustee does not contend that the revocation was illegal under the Gaming Act or violated due process of law. Rather, it contends that the Bankruptcy Code's avoidance rules imposed an independent obligation on the Commonwealth to pay some value when it revoked the license. Trustee's Opening Br. 18 ("[T]he federal courts may accept as a matter of fact and law that the License was revoked and is lost to the Debtor; the question here, however, is whether, under fraudulent transfer law, the Commonwealth must, but failed to, pay reasonably equivalent value for the Debtor's property interests which were transferred by way of such revocation. . . ."). But neither the Bankruptcy Court nor the District Court reviewed the merits of that argument as they concluded that the Rooker-Feldman doctrine barred such review. The Trustee argues that both Courts erred and that the Trustee is entitled to a merits determination of its claim that the license revocation was a fraudulent transfer. Accordingly, we turn to an analysis of that contention.

In Exxon Mobil Corp. v. Saudi Basic Industries Corp. the Supreme Court indicated that the federal courts had been

---

that the transfer was the involuntary revocation of the license, but . . . what we're asking to be avoided is the failure of the -- of the Commonwealth to repay the license fee"). And to further complicate the matter, the relief for the fraudulent transfer claims is the value of the license, not a refund of the fee. In theory, the license's value could be measured by an amount differing from the fee. But the Trustee used the $50 million license fee as a proxy for the value of the license. Despite this confusion, we are guided by the allegations in the adversary complaint and will limit our discussion to the transfer as defined in the pleadings.

14

applying the Rooker-Feldman doctrine too broadly and consequently it clarified that the doctrine is confined to "limited circumstances" where "state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments." 544 U.S. 280, 284, 291, 125 S.Ct. 1517, 1521-22, 1526 (2005). In Great Western, which we decided after the Supreme Court decided Exxon Mobil, we said the doctrine applies when four requirements are met: (1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment. Great Western, 615 F.3d at 166. Our analysis focuses on the fourth requirement.[4]

---

[4] The Trustee does not contend that the third requirement for the Rooker-Feldman doctrine to apply was not met, i.e., that the state-court judgment issued before the federal suit was filed, but the Trustee does make glancing arguments with respect to the first requirement. It argues that PEDP, not the Trustee, was the plaintiff who lost in state court because the Trustee joined this case after the bankruptcy began and it acts on behalf of the estate's creditors. Trustee's Opening Br. 20 ("In contesting the revocation of the License, the Debtor was complaining of the injuries it would sustain as a result of the loss of the License. The Trustee, in contrast, is complaining of the injuries sustained by the Debtor's creditors . . . .") (emphasis in original); Reply Br. 8 ("The Trustee does not stand in the pre-petition Debtor's shoes in pursuing the Fraudulent Transfer Claims."). The District Court rejected this argument, App'x 8. But we need not reach this question because we find that the Trustee's claim does

15

By asking the Bankruptcy Court to find that the license revocation was an avoidable fraudulent transfer, the Trustee did not invite that Court to "review and reject" the revocation order. See Great Western, 615 F.3d at 166. The "review and reject" requirement concerns whether the federal court must conduct "prohibited appellate review" of state-court decisions. Id. at 169. "Prohibited appellate review" means "a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." Id. (internal citation and quotation marks omitted).

Such a prohibited review differs from mere "attempts to litigate in federal court a matter previously litigated in state court. . . ." Id. (quoting Exxon Mobil, 544 U.S. at 293, 125 S.Ct. at 1527). When the plaintiff attempts to litigate previously litigated matters, the federal court has jurisdiction "as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court." Id. (quoting Exxon Mobil, 544 U.S. at 293, 125 S.Ct. at 1527) (internal quotation marks omitted; alteration in original). In other words, if the federal court's review does not concern "the bona fides of the prior judgment," the federal court "is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment." Id. (internal citation and quotation marks omitted). In that situation, the Rooker-Feldman doctrine would not apply because the plaintiff is not "complaining of legal injury caused by a state court judgment because of a legal error committed by the state court." Id. (internal citation and quotation marks omitted).

not come within the fourth requirement for the doctrine to bar this action.

The Trustee's fraudulent transfer claims did not ask the Bankruptcy Court to make an appellate review of the revocation order. The Commonwealth Court considered whether the Board had authority under the Gaming Act to revoke the slot machine license due to PEDP's noncompliance with the Board's orders, and whether the requirements were sufficiently clear and afforded due process to the licensee during the revocation proceedings. The Bankruptcy Court did not need to consider the bona fides of that decision or review the Commonwealth Court proceedings, and the Trustee does not argue that the Bankruptcy Court should make such a review. Rather, the Bankruptcy Court could have started from the premise that the Board and Commonwealth Court reached the correct result under state law. The Court then could have decided whether that revocation, which occurred because of valid state proceedings, could nonetheless be avoided under the Bankruptcy Code. To decide that question, the Bankruptcy Court should have determined if the revocation of the license was a fraudulent transfer, i.e., it should have considered whether PEDP had an interest in the license, transferred it within the lookback period, became insolvent as a result of the transfer, and did not receive reasonably equivalent value in return for the transfer. See In re Fruehauf Trailer Corp., 444 F.3d 203, 210-11 (3d Cir. 2006) (listing elements of constructive fraudulent transfer claim). The Bankruptcy Court could have answered these questions without rejecting or even reviewing the Commonwealth Court's decision. And, if it accepted the Trustee's argument, the Bankruptcy Court would have concluded that the Bankruptcy Code permitted avoidance of the transfer, not that the Commonwealth Court had committed legal error.[5]

---

[5] When we say that the Bankruptcy Court would have permitted

17

We recognize, as did the Bankruptcy Court, that the fraudulent transfer claims and the claims before the Commonwealth Court raised overlapping legal issues. But that circumstance did not mean that the Bankruptcy Court was required to reject or even review the Commonwealth's order for the Bankruptcy Court to decide whether the license revocation was a fraudulent transfer. Consider, for example, the overlapping question of interest in the license. In deciding that the Board had authority to revoke the license, the Commonwealth Court considered whether PEDP had an interest in the license of which PEDP could not be deprived without due process of law. Phila. Entm't & Dev. Partners, 34 A.3d at 276. The Bankruptcy Court held, however, that if it "was to determine that the Debtor held an interest in the License . . . this Court would necessarily be required to review the merits of the earlier state court decisions." In re Phila. Entm't & Dev. Partners, 549 B.R. at 139. The Bankruptcy Court, however, did not explain why if it made that determination it would have been required to review the merits of the Commonwealth Court decision, and we see no reason why it would have had to have done so.

The state and federal courts would address the similar question of property interest, but the Bankruptcy Court would not need to review the Commonwealth Court's decision to reach its conclusion. The Bankruptcy Court instead would apply its independent reading of the law governing whether PEDP had an interest in the license. That inquiry would not have implicated

avoidance of the transfer we mean only that the Rooker-Feldman doctrine did not bar the Court from finding that there had been a fraudulent transfer. We are not expressing an opinion on the merits of the claim.

18

the Rooker-Feldman doctrine. As we explained in Great Western, a federal court can address the same issue "and reach[] a conclusion contrary to a judgment by the first court," as long as the federal court does not reconsider the legal conclusion reached by the state court. Great Western, 615 F.3d at 169.

Our above conclusion brings us to the next question, which concerns the relief requested by the Trustee. In the adversary complaint, PEDP prayed for payment by the Commonwealth of the full value of the transfer. App'x 123 ¶ 104, 125 ¶ 114.[6] The Bankruptcy Court held that the Rooker-Feldman doctrine barred review of the fraudulent transfer claim because payment for the value of the license was the functional equivalent to invalidating the state court decision. We again disagree. Because the fraudulent transfer claim in the Bankruptcy Court was independent of the Gaming Act and due process claims previously advanced in the state court, it does not matter for Rooker-Feldman doctrine purposes that the relief that

---

[6] The Trustee does not contend that the Board should reissue the slot machine license to PEDP. The Trustee's sole argument in terms of remedy is that the Commonwealth must pay for the value of the license. See, e.g., Trustee's Opening Br. 4 ("As a result [of the fraudulent transfer], the Trustee is entitled to recover the value of the Debtor's transferred interests in the License for the benefit of the Debtor's creditors."); id. 12 ("[T]he Trustee challenged the dismissal of the Fraudulent Transfer Claims on the basis that the Bankruptcy Court fundamentally misconstrued the Trustee's claims and improperly conflated the state court revocation proceedings with the Trustee's claim that no value was payed [sic] for the Debtor's property interests which were transferred through revocation of the Debtor's License.").

the Trustee sought, if granted, would frustrate the Commonwealth Court's order.  See Great Western, 615 F.3d at 169 (finding the Rooker-Feldman doctrine inapplicable to independent claims "regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment").

In reaching its contrary conclusion, the Bankruptcy Court relied on Maple Lanes, Inc. v. Messer, 186 F.3d 823 (7th Cir. 1999).  But we conclude that that case is unpersuasive given the Supreme Court's refinements to the Rooker-Feldman doctrine after the court of appeals decided Maple Lanes.  In that case, the plaintiff, Maple Lanes, lost its liquor license after the local sheriff told a newspaper that there had been drug sales in its liquor store.  Maple Lanes unsuccessfully challenged the revocation in a state court.  Maple Lanes then sued the sheriff in federal court for defamation under 42 U.S.C. § 1983.  It alleged that his statement caused the city to revoke its license and it sought as damages the monetary value of the license.  The court of appeals dismissed the complaint pursuant to the Rooker-Feldman doctrine as it held that the federal claim was an end-run around the revocation:  "In essence, Maple Lanes seeks to undo the effects of the revocation of its liquor license by collecting an amount of damages from [the sheriff] . . . equal to the monetary value of the license."  Id. at 825.  The court stated that "[i]f a federal court were to award the relief," the "result would effectively reverse the state court judgment upholding the revocation of the liquor license.  There is little difference between awarding Maple Lanes the monetary value of the license and the license itself."  Id. at 826.

In our view, the result in Maple Lanes does not comport with the Rooker-Feldman doctrine as it now is understood.  The

20

court of appeals decided Maple Lanes several years before the Supreme Court decided Exxon Mobil and a decade before we decided Great Western. It is clear that both Exxon Mobil and Great Western call the reasoning in Maple Lanes into question.[7] In particular, Maple Lanes focused on the effect of the relief i.e., that damages would functionally "undo the effect of the revocation" even though the revocation order would still be valid, but it did not address whether the federal court in making its adjudication needed to review the state court decision for legal error. The focus, we now know, should be the other way around. That is, the crux of a Rooker-Feldman doctrine inquiry is whether it requires the federal court to look at the "bona fides of the prior judgment," not whether "compliance with the second judgment would make it impossible to comply with the first judgment." Great Western, 615 F.3d at 169. Thus, contrary to Maple Lanes' reasoning, the Rooker-Feldman doctrine does not apply merely because the claim for relief if granted would as a practical matter undermine a valid state court order. Accordingly, we respectfully disagree with the holding in Maple Lanes and so, too, with the Bankruptcy Court's reliance upon it.

The same reasoning undoes the Bankruptcy Court's last conclusion. To support its argument that payment for the value of the license was the functional equivalent of returning the license, the Bankruptcy Court discussed apparently contradictory legal positions in the state and federal proceedings. The Bankruptcy Court noted that the Board and Commonwealth Court accepted PEDP's argument that it would not recoup any money after the revocation; but the Trustee now

---

[7] We are not suggesting that Great Western if decided before Maple Lanes would have been binding on the Maple Lanes court.

21

claims a right to payment for the license because of the revocation. In re Phila. Entm't & Dev. Partners, 549 B.R. at 141. The Commonwealth keys in on this point as well, arguing that "it was clear to all involved in those proceedings that revocation of PEDP's license would not entitle PEDP to return of any portion of its $50 million license fee. . . ." Commonwealth's Br. 19. But even if the Trustee has taken inconsistent positions before the different tribunals, "attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than Rooker-Feldman." In re Miller, 666 F.3d 1255, 1261 (10th Cir. 2012).

In sum, the Trustee is not "complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil, 544 U.S. at 291, 125 S.Ct. at 1526. The Bankruptcy Court applied the Rooker-Feldman doctrine too broadly in finding that the fraudulent transfer claims require the federal courts to void the state court order. Accordingly, we conclude that the Bankruptcy Court erred in holding that the Rooker-Feldman doctrine barred it from considering the Trustee's fraudulent transfer claims, and we will reverse its grant of dismissal as to Counts Two, Three, and Four of the adversary complaint.[8]

Usually, the final step in a Rooker-Feldman doctrine

---

[8] Because we find that the Rooker-Feldman doctrine does not bar review of the Trustee's claims, we will not reach the Trustee's alternative argument that the doctrine never can apply when the Bankruptcy Court is enforcing substantive provisions of the Bankruptcy Code. Trustee's Opening Br. 21-25.

analysis is to "apply state law to determine the preclusive effect of the prior state-court judgments." Great Western, 615 F.3d at 173. Although the Commonwealth raised issue preclusion issues before the Bankruptcy Court, that Court did not address the argument and neither party has raised those issues on this appeal. And although the parties have briefed the merits of the fraudulent transfer claims, the Commonwealth focused, as had the Bankruptcy and District Courts, on whether a fraudulent transfer claim arises from the payment of the license fee or the refund, not the revocation of the license itself as urged by the Trustee—a result likely attributable to the unclear nature of the Trustee's claims, as we explained above. It is not surprising, therefore, that we do not have adequate briefing on the preclusion issues. Accordingly, we will remand this matter to the District Court to address inter alia (1) whether claim or issue preclusion bars judicial review of the Trustee's claim that the license revocation was a constructively fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA; and if not (2) whether the Trustee has stated a claim that the license revocation constitutes a fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA; and (3) whether the Eleventh Amendment bars judicial review of the Trustee's claim that the license revocation was a constructively fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA.

## V. CONCLUSION

For the foregoing reasons, we will reverse the District Court's affirmance of the Bankruptcy Court's dismissal of the Trustee's fraudulent transfer claims in Counts Two, Three, and Four of the adversary complaint, which the Bankruptcy Court

23

predicated on its belief that the federal courts lacked subject matter jurisdiction over the claims. We will remand the case for further proceedings to the District Court which, at its option, may decide the remaining issues that come before it on the remand or may, in turn, remand the matter to the Bankruptcy Court for further proceedings.