**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2035
_____

SHURANDA SHA'KAARII MELENDEZ-SPENCER; and
A'SIERRA GIIANNA SPENCER

v.

GLORIA SHACK; MIGDALIA DIAZ; JOYCE SMITH;
GLORIA CAMERON-WALTON; EILEEN CRUMMY; MANAGERIAL DOES;
SUPERVISORY DOES; CARLOS NOVOA; SEBASTIAN ANTHONY;
REGINA TROUTMAN; CHRISTIAN ARNOLD; LINDA HIGGINS;
JEAN LOUIS-HANSY; ALLISON BLAKE; THE STATE OF NEW JERSEY
DIVISION OF YOUTH AND FAMILY SERVICES, conducting its business as DYFS;
DCF; VALERIE TALMADGE; and MR. & MRS. DONALD COWAN

Shuranda Sha'Kaarii Melendez-Spencer,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civ. No. 2-12-cv-01925)
District Judge: Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2018
Before: JORDAN, RESTREPO, and SCIRICA, Circuit Judges

(Opinion filed: August 27, 2018)

_____

PER CURIAM

This is a pro se civil rights action filed in March 2012, by Shuranda Melendez-Spencer and her then-minor daughter, A'Sierra (together, "Plaintiffs"). Plaintiffs sued New Jersey's child welfare agency ("DCF") and several state employees (collectively, "Defendants"), alleging that A'Sierra was removed from her mother's care in 2003 based on unfounded complaints of abuse and neglect. Plaintiffs also alleged that while A'Sierra was under Defendants' supervision she suffered horrific acts of physical and sexual abuse at various living arrangements. Generally speaking, Plaintiffs attributed A'Sierra's abuse to Defendants' allegedly inadequate supervision, as well as to misrepresentations they allegedly made to judicial officers and Melendez-Spencer regarding the status of A'Sierra. In a fourth amended complaint ("the Complaint") filed by counsel, Plaintiffs used those and other allegations to support a host of claims under 42 U.S.C. § 1983 and state statutory and common law.

Many of Plaintiffs' claims survived dismissal under Federal Rule of Civil Procedure 12(b), and the parties engaged in lengthy discovery. Ultimately, it appears that no evidence was adduced to support Plaintiffs' core allegations. The District Court essentially concluded as much in granting Defendants' motion for summary judgment, and it specifically determined that Plaintiffs' claims were legally defective in several

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

2

ways: the claims were either barred by the applicable statutes of limitation or the Rooker-

Feldman doctrine,[1] or were successfully parried by Defendants' various immunity

defenses.[2] Melendez-Spencer appealed.[3]

---

constitute binding precedent.

[1] See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923); cf. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005) (explaining that "federal courts of first instance" lack jurisdiction to "review and reverse unfavorable state-court judgments"); Great W. Mining and Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (identifying four requirements that must be met for Rooker-Feldman doctrine to apply). We focused on the fourth requirement of the Rooker-Feldman doctrine—that "the plaintiff invites the district court to review and reject the state-court judgment"—in In re Philadelphia Entertainment & Development Partners, 879 F.3d 492 (3d Cir. 2018). See id. at 500. Reinforcing various features of the "review and reject" requirement, we stated there, in pertinent part: "if the federal court's review does not concern the bona fides of the prior judgment, the federal court is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In that situation, the Rooker-Feldman doctrine would not apply because the plaintiff is not complaining of legal injury caused by a state court judgment because of a legal error committed by the state court." Id. (internal citations and quotations omitted). Although the District Court here determined that Rooker-Feldman barred Plaintiffs' claims "related to the 2003 emergency removal of [A'Sierra] from [Melendez-Spencer's] custody, and the subsequent State Court hearings relating thereto," we are not persuaded that Plaintiffs' Complaint sought relief as a result of any purported legal error by the state court, rather than as a result of allegedly unlawful conduct by Defendants. See B.S. v. Somerset Cty., 704 F.3d 250, 260 (3d Cir. 2013) (rejecting application of Rooker-Feldman "[b[ecause the injury Mother claims is [] traceable to Appellees' actions, as opposed to the state court orders those actions allegedly caused").

[2] One piece of the District Court's immunity analysis deserves attention here. The District Court determined that, under Mammaro v. New Jersey Division of Child Protection & Permanency, 814 F.3d 164 (3d Cir. 2016), the state-employee defendants in this case were entitled to "absolute" immunity relative to their involvement in the proceedings that separated A'Sierra from Melendez-Spencer. The District Court, however, misread Mammaro. There, we concluded that child welfare employees were entitled to *qualified* immunity on the plaintiff's claim that a temporary displacement of custody of her child violated substantive due process guarantees under the Fourteenth Amendment. The

3

We agree with the District Court that it was proper to grant Defendants' motion for summary judgment. Melendez-Spencer's claims lacked any evidentiary support, thus enabling Defendants to show through their documentary submissions that there were no genuine issues of material fact to send to a jury. Melendez-Spencer's brief on appeal only reinforces as much: she relates that "[m]ost of the facts of this case can be gleaned from" the Complaint, Br. at 6, but allegations disputed in a responsive pleading, compare ECF 68 (the Complaint) with ECF 72 (Defendants' Answer), are not evidence that can support or withstand summary judgment. See Williams v. Borough of W. Chester, Pa., 891 F.2d

---

employees were entitled to *qualified* immunity on that claim, we held, because there was "no consensus of authority"—i.e., no clearly established law—that temporarily removing a child, after the parent takes her out of state-approved housing without permission, violates substantive due process. Id. at 170.

Nevertheless, the District Court correctly found applicable B.S., supra, where we held that "absolute immunity for child welfare employees is appropriate when the employee in question 'formulat[es] and present[s] . . . recommendations to the court' with respect to a child's custody determination, even if those recommendations are made outside the context of a dependency proceeding." 704 F.3d 250, 265 (citation omitted). B.S. was distinguished by the district court in Mammaro on the ground that "the bulk of Plaintiff's allegations . . . concern actions or omissions . . . that appear to lack a prosecutorial purpose." Because the employees in Mammaro challenged on interlocutory appeal only the district court's qualified immunity determination, we had no occasion there to review its absolute immunity determination and the applicability of B.S.

[3] We have jurisdiction under 28 U.S.C. § 1291, and our review is de novo. Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ., 880 F.3d 643, 650 (3d Cir. 2018). We will affirm if Defendants established "that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, we may affirm on any basis supported by the record. Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc., 886 F.3d 332, 338 (3d Cir. 2018). We additionally note that, because A'Sierra did not join this appeal, we are not reviewing the District Court's decision to the extent it granted summary judgment on her personal claims.

4

458, 460 (3d Cir. 1989).[4] And though Melendez-Spencer argues that "[i]ssues of material fact abound in this matter," Br. at 6, she fails on appeal to identify any record evidence indicating even one disputed, <u>material</u> issue of fact. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Separate and apart from lacking evidentiary support, Melendez-Spencer's claims also were time-barred, and she does not argue otherwise on appeal. Her claims under 42 U.S.C. § 1983, New Jersey's Civil Rights Act, N.J.S.A. § 10:6-1 <u>et seq.</u>, and New Jersey tort law all are governed by a two-year statute of limitations. See <u>Dique v. New Jersey State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010); <u>Save Camden Public Sch. v. Camden City Bd. of Educ.</u>, --- A.3d ---, 2018 WL 1915071, at *4 (N.J. Super. Ct. App. Div. Apr. 24, 2018).[5] Melendez-Spencer did not file suit until March 2012, but the alleged misconduct of Defendants cited in the Complaint to support Melendez-Spencer's claims all occurred

---

[4] In opposing summary judgment, Plaintiffs argued that "[t]he only evidence that [they] can produce is their own testimony," ECF 117 at 13, though they produced neither transcripts of their deposition testimony (if they were even deposed) nor affidavits.

[5] In the Complaint, Melendez-Spencer raised a claim under the New Jersey Child Placement Bill of Rights Act ("CPBRA"), N.J.S.A. § 9:6B-1 to 6. It is not clear whether the CPBRA incorporates a statute of limitations. Regardless, Melendez-Spencer had no standing to bring a claim under CPBRA because a private right of action thereunder, assuming one exists, is held by the subject child, not her parents. See N.J.S.A. § 9:6B-4; cf. <u>K.J. v. Div. of Youth and Family Servs.</u>, 363 F. Supp. 2d 728, 743-45 (D.N.J. 2005).

(in some instances years) before March 2010. <u>See</u> Defs. Br. at 17.[6] Her claims were thus untimely.

Therefore, the judgment of the District Court will be affirmed. Melendez-Spencer's serial motion for an extension of time to file a reply brief is denied; she was previously directed to our Local Appellate Rules, which provide that "[o]nly one motion for extension of time to file a reply brief may be granted." 3d Cir. L.A.R. 31.4 (2011).

---

[6] We recognize Plaintiffs' *allegations* in the Complaint that the 2003 findings of child neglect and excessive corporal punishment were overturned in mid-2010, and that the predicates for certain of Melendez-Spencer's claims thus could not have been 'discovered' until that time. <u>Cf.</u> <u>Gonzalez v. Corning</u>, 885 F.3d 186, 191 (3d Cir. 2018) ("[A] claim brought under the law of a state in which the discovery rule applies arises when the claimant discovers the injury."). The summary judgment *record*, however, demonstrates that there is no genuine dispute as to the following: (1) letters from DCF and the New Jersey Office of the Attorney General ("NJAG"), <u>see</u> ECF 116-8 at 2 (Aug. 2010 DCF letter); ECF 116-8 at 4-5 (Oct. 2010 NJAG letter), communicating that certain findings were being "overturned," concerned not the findings supporting the 2003 removal but rather separate findings, made several years later, of substantiated abuse and neglect first revealed in the report by a state-retained clinical social worker (the "Auerbach report"); (2) these later findings of abuse and neglect were "overturned" not because they were false but because DCF was no longer inclined to participate in the administrative review process, given "the age of the children involved and their current status, the fact that [Melendez-Spencer] is already on [DCF's] central registry for a previous substantiated allegation of physical abuse and the fact that the [DCF] worker who conducted the investigation is attending graduate school in London and was unavailable and / or unwilling to testify," ECF 116-8 at 4; and (3) no evidence was adduced by Melendez-Spencer to support the notion that the allegedly unlawful conduct of Defendants would not have occurred absent substantiation of certain allegations in the Auerbach report. The 2010 letters from DCF and the NJAG thus were not material to any of Melendez-Spencer's personal claims and their 'discovery' did not trigger any relevant statute of limitations or otherwise serve as points of claim-accrual.