**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3171

_____

In re PHILADELPHIA ENTERTAINMENT AND DEVELOPMENT PARTNERS LP,
d/b/a Foxwoods Casino Philadelphia,
Debtor

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE;
COMMONWEALTH OF PENNSYLVANIA

PERSIL MANGEUR LLC, in its capacity as the trustee of the Liquidation Trust for the
estate of debtor Philadelphia Entertainment & Development Partners, LP d/b/a Foxwoods
Casino Philadelphia,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-00295)
District Judge:  Honorable Joseph F. Leeson, Jr.

_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 24, 2021

_____

Before: GREENAWAY, JR., SHWARTZ, Circuit Judges, and KANE, District Judge.[*]

(Filed: June 29, 2021)

_____

_____

[*] The Honorable Yvette Kane, Senior United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

OPINION**

_____

SHWARTZ, Circuit Judge.

Philadelphia Entertainment and Development Partners, LP ("PEDP") obtained a slot machine license from the Pennsylvania Gaming Control Board ("Board") in exchange for a $50 million fee. PEDP failed to satisfy the conditions of the license, so the Board revoked it. PEDP thereafter filed for Chapter 11 bankruptcy and commenced an adversary action against the Commonwealth for fraudulent transfer pursuant to 11 U.S.C. §§ 544(b), 548, 550, and 551, and the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons. Stat. §§ 5101 et seq., seeking to recover the value of the license.[1]

The Bankruptcy Court dismissed the adversary action because, among other things, it was barred by sovereign immunity. The District Court affirmed. We agree and will also affirm.

I

A

As we explained in In re Philadelphia Entertainment & Development Partners, LP, 879 F.3d 492, 495 (3d Cir. 2018) ("Phila. Ent. I"), the Board awarded a slot machine license to PEDP, for which PEDP paid $50 million. The "Board required PEDP to open

_____

** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.
[1] The Complaint was filed by PEDP, but is now being prosecuted by Persil Mangeur LLC, the Trustee of PEDP's liquidation fund. For simplicity, we refer to the plaintiff as PEDP.

2

its facility and commence the operations by May 2009, but PEDP did not meet this deadline and has never opened the facility. . . [and] the Board . . . revok[ed] PEDP's slot machine license[.]" Id. The Pennsylvania courts rejected PEDP's challenges to the revocation orders. See Phila. Ent. & Dev. Partners, LP v. Pa. Gaming Control Bd., 34 A.3d 261, 268-80 (Pa. Commw. Ct. 2011); Phila. Ent. & Dev. Partners, LP v. Pa. Gaming Control Bd., 41 A.3d 852 (Pa. 2012).

> Thereafter,
>
> PEDP filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code, . . . and [an] adversary complaint against the Commonwealth. . . . PEDP asserted claims to avoid what it claimed was a constructively fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 544(b) and under [PUFTA], . . . [and sought to] recover payment from the Commonwealth of the full value of the transfer, which PEDP estimated to be $50 million, the amount of the license fee it had paid.
> . . .
> [T]he Bankruptcy Court dismissed the adversary complaint [based on the Rooker-Feldman doctrine,] In re Phila. Ent. & Dev. Partners, L.P., 549 B.R. 103, 110-11 (Bankr. E.D. Pa. 2016)[,] . . . [and] the District Court affirmed.

Phila. Ent. I, 879 F.3d at 495-98. We reversed, concluding that the Rooker-Feldman doctrine did not bar the Bankruptcy Court's review of the fraudulent transfer claims, id. at 502-03, and remanded for the District Court to address, among other things, "whether the Eleventh Amendment bars judicial review of the Trustee's claim that the license revocation was a constructively fraudulent transfer under § 548(a)(1)(B) or § 544(b) and the PUFTA." Id. at 504.

B

On remand, the Bankruptcy Court dismissed Plaintiff's fraudulent transfer claims with prejudice. In re Phila. Ent. & Dev. Partners, L.P., 611 B.R. 51, 57, 77 (Bankr. E.D.

3

Pa. 2019) ("Phila. Ent. II").  The Court concluded, among other things, that sovereign

immunity barred the claims because they (1) did not invoke the Court's in rem

jurisdiction nor were they ancillary to that jurisdiction since the license did not constitute

property or an asset of PEDP, id. at 68; and (2) sought only to recover the purported

value of the license, making it a suit for money damages, which is not subject to the

narrow sovereign immunity exception set forth in Central Virginia Community College v.

Katz, 546 U.S. 356 (2006), Phila. Ent. II, 611 B.R. at 67. [2]  The District Court affirmed,

see In re Phila. Ent. & Dev. Partners, LP, 623 B.R. 114, 123 (E.D. Pa. 2020) ("Phila. Ent.

III"), holding, among other things, that sovereign immunity bars the fraudulent transfer

claims because the license was not the property of PEDP.

PEDP appeals.

II[3]

A

_____

[2] Both the Bankruptcy and District Courts also explained that establishing a property interest in the license was a threshold requirement for Plaintiff's claim under § 548 and establishing that the license was an asset of the debtor was a threshold requirement for a claim under PUFTA, which Plaintiff asserted via § 544(b).  Phila. Ent. II, 611 B.R. at 68-69; see also In re Phila. Ent. & Dev. Partners, LP, 623 B.R. 114, 120 (E.D. Pa. 2020) ("Phila. Ent. III").  Because these courts found that the license was a revocable privilege under Pennsylvania law, they held that it did not constitute a property interest under § 548 or asset under PUFTA.  Phila. Ent. II, 611 B.R. at 68-73; see also Phila. Ent. III, 323 B.R. at 118, 120-21.

[3] The Bankruptcy Court had jurisdiction to hear the adversary proceeding under 28 U.S.C. § 157(b).  The District Court had jurisdiction to hear the appeal of the Bankruptcy Court's order under 28 U.S.C. § 158(a).  We have jurisdiction over the appeal from the District Court's order under 28 U.S.C. §§ 158(d)(1) and 1291.

"Because the District Court acted as an appellate court, we review its determinations de novo."  In re Titus, 916 F.3d 293, 299 (3d Cir. 2019).  We review the Bankruptcy Court's legal conclusions de novo as well.  Id.

4

Because sovereign immunity limits our jurisdiction, see In re Hechinger Inv. Co. of Del., 335 F.3d 243, 249 (3d Cir. 2003), we must first determine whether the Commonwealth has waived the sovereign immunity that would otherwise bar PEDP's suit. "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,'" and are narrowly construed. United States v. Nordic Vill. Inc., 503 U.S. 30, 33-34 (1992) (citation omitted). In the bankruptcy context, we have determined that the sovereign immunity defense is unavailable for causes of action that "further[] a bankruptcy court's in rem jurisdiction."[4] See In re Venoco LLC, 998 F.3d 94, 104 (3d Cir. 2021) (citing Katz, 546 U.S. at 370-78). As a result, if PEDP cannot show it had a property interest in the license, then this adversary proceeding does not concern PEDP's bankruptcy estate and is barred by sovereign immunity because it does not further the Bankruptcy Court's in rem jurisdiction. See id. at 104-05 & n.12 (noting that sovereign immunity is not foreclosed in fraudulent conveyance proceedings where the purported transfer is not of the debtor's property (citing Phila. Ent., 549 B.R. at 123)). Accordingly, we must determine whether the license was PEDP's property.

B

---

[4] Section 106(a)(1) of Title 11 also embodies a waiver of sovereign immunity. Section 106(a) provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to . . . Sections 544, . . . 548, . . . 550, [and] 551 . . . of this title." 11 U.S.C. § 106(a). "[E]nactment of [§ 106, however,] was not necessary to authorize the Bankruptcy Court's jurisdiction over [in rem] preference avoidance proceedings" against states, Katz, 546 U.S. at 361, so a discussion of § 106 is unnecessary to determine whether the Commonwealth waived its sovereign immunity defense.

We generally "look to state law to determine the nature of a debtor's interest in property." In re Net Pay Sols., Inc., 822 F.3d 144, 158 n.13 (3d Cir. 2016); see also Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law . . . [u]nless some federal interest requires a different result."). Because Pennsylvania statutes govern this dispute, and we must interpret them to determine whether PEDP had a property interest in the license, we "apply the [Pennsylvania] Statutory Construction Act ["SCA"], which directs us to ascertain and effectuate the intent of the General Assembly." Johnson v. Phelan Hallinan & Schmieg, LLP, 235 A.3d 1092, 1097 (Pa. 2020) (citing 1 Pa. Cons. Stat. § 1921(a)). According to the SCA, "[t]he best indication of legislative intent is the plain language of a statute." Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1027 (Pa. 2018). "Words and phrases ordinarily should be understood according to their common and approved usage." Id. at 1027-28 (citation omitted). "Only when the words of a statute are ambiguous will we resort to other considerations to discern legislative intent." Johnson, 235 A.3d at 1097 (citing 1 Pa. Cons. Stat. § 1921(c)).

We must decide whether the Pennsylvania Horse Racing Development and Gaming Act ("Gaming Act") or PUFTA grants PEDP a property interest in the license. The Gaming Act provides that "[t]he issuance or renewal of a license . . . shall be a revocable privilege." 4 Pa. Cons. Stat. § 1311(d); see also id. §§ 1102(7) ("Participation in limited gaming authorized under this part by any licensee . . . shall be deemed a privilege."), 1326(b) ("[T]he board may at its discretion . . . revoke . . . any . . . license . . . issued under this part if it receives any information from any source that the applicant . .

6

. is in violation of any provision of this part."). Moreover, the Gaming Act provides that a license issued by the Board "shall not be sold, transferred or assigned," and that the Gaming Act should not be construed "to create in any person an entitlement to a license." Id. § 1327. Thus, under its plain language, the Gaming Act grants only a revocable, discretionary, non-transferable privilege to operate a facility with slot machines. A licensee therefore does not own the license, and, accordingly, it is not the property of the licensee.

PUFTA defines "[p]roperty" as "[a]nything that may be the subject of ownership." 12 Pa. Cons. Stat. § 5101(b).[5] Ownership, in turn, is "the right to possess a thing." Ownership, Black's Law Dictionary (5th ed. 2016). Although PEDP possessed the license, the Gaming Act makes clear that there is no entitlement to a license and that a license is a conditional, revocable, and non-transferable privilege. See 4 Pa. Cons. Stat. § 1327; see also Arneault v. O'Toole, 864 F. Supp. 2d 361, 395 (W.D. Pa. 2012) (Plaintiff "d[id] not have a protected property right under state law to engage in the gaming industry, since Pennsylvania law expressly makes the granting of a gaming license a revocable privilege."). Thus, under the text, the license is not something a licensee owns and hence it is not property under PUFTA.

PUFTA's legislative history, viewed in light of the tools of statutory interpretation, compels the same result. A committee comment to § 5101(b) provides that "[t]he definition of 'property' is intended to be construed broadly, to include any

---

[5] PUFTA's definition of "[a]sset" includes certain exceptions to "[p]roperty of the debtor," but that definition did not include licenses, so it does not inform this dispute.

right or interest that contributes to the value of a person."[6] Id. at cmt. 9. Further, the comment states that "'property' in general includes licenses . . . whether or not transferable," and "[i]n particular, but without limitation, governmental licenses . . . that contribute to the value of the holder in general should be deemed 'property' of the holder, whether or not transferable, regardless of whether such items are deemed 'property' for other purposes." Id. Thus, § 5101 of PUFTA, read together with its comments,[7] conflicts with the Gaming Act concerning whether PEDP's slot machine license constitutes PEDP's property. While the Gaming Act provides that a slot machine license is revocable, non-transferable, and not an item to which a party may claim entitlement, see, e.g., 4 Pa. Cons. Stat. § 1311(d), PUFTA's commentary provides that governmental licenses constitute property even if not transferable, 12 Pa. Cons. Stat. § 5101, cmt. 9. In

---

[6] The committee commentary notes that "[t]his chapter, and the comments to this chapter, were drafted by a committee . . . of the Section on Corporation, Banking and Business Law of the Pennsylvania Bar Association, with the assistance of the Joint States Government Commission. The comments are part of the legislative history of this chapter under 1 Pa. Cons. Stat. § 1939." 12 Pa. Cons. Stat. § 5101, cmt. 1 (1993). Because these comments "were before the legislature at the time of enactment and are appended to the statutory text, we may treat them as evidence of legislative intent." In re Tr. Under Deed of David P. Kulig Dated January 12, 2001, 175 A.3d 222, 230 (Pa. 2017) (citing 1 Pa. Cons. Stat. § 1939 ("The comments . . . of the . . . committee . . . which drafted a statute may be consulted in the construction . . . of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly.")).

[7] Although the legislature crafted the Gaming Act presumably aware of PUFTA and its legislative history concerning licenses, Birth Ctr. v. St. Paul Cos., 787 A.2d 376, 404 (Pa. 2001) ("In enacting a statute, the legislature is presumed to have been familiar with the law, as it then existed[.]"), it used precise language concerning slot machine licenses in addition to the fact that they were non-transferable. First, the Gaming Act specifically calls the license a privilege. 4 Pa. Cons. Stat. § 1311(d). Second, the Gaming Act makes clear that there is no entitlement to licenses, that they are issued at the discretion of the Board, and that they are revocable.

other words, the Gaming Act is clear that a slot machine license cannot be a licensee's property while PUFTA's commentary states that a governmental license is property.

Where two statutes conflict irreconcilably, the "more specific provisions control over the general ones." Commonwealth, Dep't of Pub. Welfare v. Eiseman, 125 A.3d 19, 32 (Pa. 2015) (citing 1 Pa. Cons. Stat. § 1933).[8] Because the Gaming Act includes the more specific provision, it controls.[9] The Gaming Act specifically relates to the issuance and revocation of slot machine licenses and discusses a licensee's conditional, revocable, and non-transferable interest in such license. See 4 Pa. Cons. Stat. § 1102. PUFTA, on the other hand, generally discusses fraudulent transfers of any kind, and, although its commentary mentions governmental licenses, it does not specifically mention gaming licenses. See 12 Pa. Cons. Stat. § 5101; id. at cmt. 9.[10] Accordingly, the Gaming Act's

_____

[8] Title 1 Pa. Cons. Stat. § 1933 provides in full that:
Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.
[9] The Pennsylvania legislature enacted the more specific Gaming Act after the more general PUFTA, compare 12 Pa. Cons. Stat. § 5101 (1993), with 4 Pa. Cons. Stat. § 1102 (2004), so we cannot presume that the General Assembly intended for PUFTA's general provision to prevail over the Gaming Act's specific statements that the license constitutes a revocable privilege.
[10] PUFTA's commentary's use of the word "particular" does not change the result, see 12 Pa. Cons. Stat. § 5101, cmt. 9 ("In particular, but without limitation, governmental licenses and permits that contribute to the value of the older in general should be deemed 'property' of the holder, whether or not transferable. . ."), because the "governmental licenses" governed in PUFTA are more general than the specific slot machine licenses subject to the Gaming Act, see, e.g., 4 Pa. Cons. Stat. § 1311 (titled "Additional slot machine license requirements").

specific description of the slot machine license as a privilege, and hence not property, is an exception to PUFTA's general commentary providing a licensee has a property interest in a governmental license for purposes of fraudulent conveyances. See 1 Pa. Cons. Stat. § 1933; see also Vill. of Rosemont v. Jaffe, 482 F.3d 926, 936 (7th Cir. 2007) (holding that a gaming license is not "a res with respect to which the bankruptcy court had the authority to displace the state's police power"). Because the license is a revocable, non-transferable privilege, it is not property that the debtor owns and hence not res of the bankruptcy estate. As a result, the Commonwealth retains its immunity from a suit seeking to recover a license's value and, accordingly, the adversary proceeding requesting such relief was correctly dismissed.

## III

For the foregoing reasons, we will affirm.