NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0595n.06

No. 20-1712

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| IN RE: HAKEEM LOWRY, | ) | |
| Debtor. | ) ) | **FILED**<br>Dec 27, 2021<br>DEBORAH S. HUNT, Clerk |
| _____ | ) ) | |
| HAKEEM LOWRY, | ) ) | |
| Plaintiff - Appellant, | ) ) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN<br>DISTRICT OF MICHIGAN |
| SOUTHFIELD NEIGHBORHOOD<br>REVITALIZATION INITIATIVE, et al., | ) ) ) | |
| Defendants - Appellees. | ) | |

Before: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

**ROGERS, Circuit Judge.** Debtor Hakeem Lowry owned a home in Southfield, Michigan and failed to pay his property taxes for several years. The Oakland County Treasurer foreclosed on Lowry's home in 2017. The City of Southfield exercised its statutory right of first refusal and bought the property for the amount of outstanding taxes due, which was substantially below the alleged fair market value of the property. Lowry filed for Chapter 13 bankruptcy in 2018 and argues that the foreclosure can be avoided as a constructive fraudulent transfer under 11 U.S.C. § 548. Because the federal § 548 claim is independent of the state-court judgment, the *Rooker-Feldman* doctrine does not support the bankruptcy court's dismissal of Lowry's claim. Furthermore, the amount paid on foreclosure bore no relation at all to the value of the property, thus precluding appellees' alternative argument that that the sale was for "a reasonably equivalent

value" under the rule of *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994). Remand is accordingly warranted for consideration of further arguments not fully developed below.

Debtor Hakeem Lowry owned a single-family home in Southfield, Michigan. Lowry failed to pay outstanding property taxes from 2011 to 2015. Starting in 2013, he entered into annual payment plans with the Oakland County Treasurer to pay his delinquent taxes. The 2013 agreement stated that "[s]tate law requires the Treasurer's Office to continue to send notices of delinquency, forfeiture, and foreclosure, including personal service, until the delinquent tax is paid in full . . . This plan is valid for one year, and will need to be renewed . . . for the remaining delinquent taxes." Lowry entered into similar agreements with the Oakland County Treasurer in 2014, 2015, and 2016, each of which stated that if Lowry did not make consistent and timely payments each and every month, he could or would lose his property.

On June 7, 2016, the Oakland County Treasurer filed a petition to collect the taxes and fees that Lowry owed on the property. On February 8, 2017, the Oakland County Circuit Court entered a judgment of foreclosure against Lowry's property. The court ordered that if the delinquent taxes and fees were not paid by March 31, 2017, fee simple title would vest in the Oakland County Treasurer. On March 31, 2017, Lowry entered into another payment plan with the Oakland County Treasurer, and the plan provided that it was "valid until February 2018." On the same day, Lowry paid $6,361.10 to resolve his delinquent taxes from 2013, but he still had outstanding delinquent taxes from 2014 and 2015 in the amounts of $4,769.33 and $5,301.41, respectively. Nonetheless, because Lowry had not paid "all forfeited delinquent taxes, interest, penalties and fees" on or before March 31, 2017, as ordered by the court, title in the property vested with the Oakland County Treasurer.

Under the Michigan General Property Tax Act, the state of Michigan has a right of first refusal on properties subject to a tax foreclosure. M.C.L. § 211.78m(1) (effective until December 31, 2020). If the state does not exercise its right of first refusal, then the local government can buy the foreclosed property for a "public purpose" by paying the "minimum bid." *Id*. The statute in effect at the time stated:

> If this state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase for a public purpose any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the minimum bid.

M.C.L. § 211.78m(1) (effective until December 31, 2020).

On July 31, 2017, the Oakland County Treasurer sold the property to the City of Southfield for $14,496.50, the amount of outstanding property taxes owed by Lowry. The City of Southfield then executed a quit-claim deed to convey the property to the Southfield Neighborhood Revitalization Initiative ("SNRI") for one dollar. Lowry alleges that his property had an assessed value of $104,100 and a fair market value of $152,000 at the time of the foreclosure. On September 29, 2017, SNRI sent Lowry a notice to quit the property by October 29, 2017. After Lowry failed to vacate the property, SNRI filed a complaint in the 46th Judicial District Court of Michigan. The court granted SNRI's motion for summary disposition on April 9, 2018, and the Oakland County Circuit Court dismissed Lowry's appeal as untimely.

Lowry filed a Chapter 13 bankruptcy plan in late 2018. On January 30, 2019, Lowry filed an adversary complaint against the Oakland County Treasurer and SNRI in the U.S. Bankruptcy Court for the Eastern District of Michigan. Lowry argued that the county's foreclosure process denied him due process in violation of the state and federal constitutions. Lowry also asserted that the fraudulent transfer provision of the Bankruptcy Code permitted the court to avoid the tax foreclosure. 11 U.S.C. § 548(a)(1)(B). The fraudulent transfer provision in relevant part provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> \*       \*       \*
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I).

Lowry then filed another adversary complaint against the Oakland County Treasurer and SNRI on May 16, 2019. Lowry again argued that he was denied due process and that § 548 permitted the court to avoid the tax foreclosure. On June 4, 2019, SNRI filed an amended motion for summary judgment. Lowry filed an emergency motion in the Oakland County Circuit Court to set aside the judgment of foreclosure, and the circuit court denied his motion on June 19, 2019.

The bankruptcy court orally granted SNRI's motion for summary judgment. The court determined that the *Rooker-Feldman* doctrine mandated dismissal because Lowry was attempting to relitigate the foreclosure proceedings from state court. The court also concluded that the rule in *BFP* should extend to tax foreclosures in Michigan. *See* 511 U.S. 531, 544-45 (1994). The Supreme Court had held in *BFP* that if the foreclosing authority followed state law in a mortgage foreclosure sale, the sale price was the "reasonably equivalent value" of the property for purposes of § 548. *See id.* The bankruptcy court extended that holding to a tax foreclosure, even where the state foreclosure proceeding required no arguable determination of the value of the property. Finally, the court determined that Lowry could not use § 548 to avoid the transfer, because "at the very least the expiration of the redemption period following the judgment of foreclosure cuts off" Lowry's ability to challenge the tax foreclosure. Lowry appealed the bankruptcy court's judgment to the district court, arguing that the *Rooker-Feldman* doctrine did not bar jurisdiction, that the rule

4

in *BFP* should not be extended to Michigan tax foreclosures, and that § 548 could still apply even though the redemption period had expired.

The district court on appeal decided only the *Rooker-Feldman* issue and affirmed the judgment of the bankruptcy court on that basis. The court first dealt with the Oakland County Treasurer's argument that Lowry lacked statutory standing under § 548 because he was not insolvent. Noting that Lowry failed to respond to this argument in his reply brief, the court indicated without holding "that Lowry may, in fact, lack standing." The court proceeded to reject the Treasurer's assertion that Lowry had waived his right to appeal the *Rooker-Feldman* issue. The court held that *Rooker-Feldman* barred review because Lowry's appeal would require the court to revisit a fully-litigated state court decision. The court concluded that Lowry's arguments were "nothing more than an attempt to gain review of the state court's ruling." The court denied Lowry's motion for a rehearing, and Lowry filed a notice of appeal on July 20, 2020.

The Oakland Country Treasurer filed a motion to dismiss for lack of jurisdiction, arguing that Lowry's failure to address the statutory standing issue (whether he was actually insolvent) in the district court constituted waiver. A panel of this court denied the motion to dismiss, because "when the bankruptcy court ruled that Lowry could not avoid the transfer, his pecuniary interest in his home was directly and adversely affected." We interpret this panel ruling as a determination that Lowry had Article III standing to appeal rather than as a ruling on the insolvency issue. The panel explicitly stated that there remain "significant questions about insolvency and the merits of Lowry's underlying claim." The parties, however, have not briefed the insolvency issue on this appeal.

Turning to the issue that the district court did rely upon, the *Rooker-Feldman* doctrine does not apply here because this appeal does not involve a review of the merits of a state court judgment.

It is now clear that the doctrine may only be applied in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Lowry's alleged injury in this case is not the state court foreclosure judgment, but instead is the fact that he could not use § 548 to avoid the foreclosure as a fraudulent transfer. Although the § 548 issue is closely related to the state foreclosure judgment, that by itself does not mean that *Rooker-Feldman* applies. The Supreme Court has stated that "[i]f a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (cleaned up). Furthermore, exercising jurisdiction does not involve our "review and rejection" of the state court judgment. *See Exxon*, 544 U.S. at 284. We can assume that the state court reached a proper foreclosure judgment, and then independently decide whether the foreclosure could be avoided as a fraudulent transfer under § 548. The Third Circuit ruled this way in very similar circumstances. *See In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 500-01 (3d Cir. 2018).

The Supreme Court has warned the lower courts against applying *Rooker-Feldman* too broadly. *See Skinner,* 562 U.S. at 531-32; *Exxon*, 544 U.S. at 280-81. In *Lance v. Dennis*, the Court noted that "[n]either *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have emphasized the narrowness of the *Rooker-Feldman* rule." 546 U.S. 459, 464 (2006). *Rooker-Feldman* should be used "only [in] an exceedingly narrow set of cases," and the main inquiry is whether the "source of the plaintiff's injury is the state-court judgment itself." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 400, 402 (6th Cir. 2020).

The bankruptcy court's alternative reliance on the Supreme Court's decision in *BFP* does not provide an alternative basis for ruling against Lowry. The Supreme Court's rule in *BFP* does not apply to the facts of this case. The Court held in *BFP* that the price received at a mortgage foreclosure sale conclusively established "reasonably equivalent value" of the mortgaged property for § 548 purposes. *See* 511 U.S. at 545. The result is that if state law is followed in a mortgage foreclosure sale, the debtor cannot use § 548 to avoid the foreclosure as a fraudulent transfer. Unlike *BFP*, however, this case involves a tax foreclosure, not a mortgage foreclosure, and in *BFP* the Court explicitly declined to decide whether the rule applied to tax foreclosures. The Court noted that "our opinion today covers only mortgage foreclosures of real estate," and "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id*. at 537 n.3. The tax foreclosure process here was also significantly different from the mortgage foreclosure system in *BFP*. The debtor's home in *BFP* was sold for $433,000 in a foreclosure sale that provided sufficient procedural protections under state law. *See id*. at 534, 541-42, 545-46. In contrast, the Michigan foreclosure law here permitted the local government to purchase the property, without a public auction, for the "minimum bid." M.C.L. § 211.78m(1) (effective until December 31, 2020). The city bought Lowry's property for $14,496 (the amount of outstanding taxes due), an amount that had no apparent relation to the value of the property and was only about ten percent of the alleged fair-market value. The Michigan law also permitted the foreclosing government authority to retain the "surplus proceeds" from a foreclosure sale, which the Michigan Supreme Court recently held violated the takings clause of the state constitution. *See Rafaeli, LLC v. Oakland Cty*., 952 N.W.2d 434, 440 (Mich. 2020). The Michigan tax foreclosure system is thus distinguishable from the mortgage foreclosure process addressed in *BFP*, so the rule in *BFP* does not apply to the facts of this case.

It is true that the foreclosure sale in *BFP* did not necessarily result in fair market value, but it was at least somewhat correlated to the value of the property in the not-purely-market conditions of a statutory foreclosure sale. This is simply not the case when a tax foreclosure sale focuses on the value of the taxes owed rather than on the value of the property. This distinction of *BFP* is persuasively supported by the Seventh Circuit's opinion in *In re Smith*, where the court held that *BFP* did not extend to the state court tax foreclosure at issue. *See* 811 F.3d 228, 234 (7th Cir. 2016). The Seventh Circuit emphasized that in the tax foreclosure process at issue, "bidders bid how *little* money they are willing to accept in return for payment of the owner's delinquent taxes." *Id*. at 234 (emphasis in original). Consequently, unlike in a mortgage foreclosure sale, "the bid amounts bear no relationship to the value of the underlying real estate." *See id*; *cf. In re Tracht Gut, LLC*, 836 F.3d 1146, 1149, 1153-55 (9th Cir. 2016).

The two primary arguments for affirming the lower court's dismissal of Lowry's constructive fraudulent transfer claim are accordingly insufficient at this juncture. Two remaining arguable alternative bases for dismissing the § 548 claim have not been adequately developed or resolved in the lower courts. First, the lower courts did not decide the threshold issue of whether Lowry satisfies the insolvency requirement of § 548. The portion of § 548 at issue here only applies if the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(ii). The district court briefly referred to the insolvency issue but did not decide it. The briefs before us do not address the issue at all.

Second, while the bankruptcy court held in the alternative that § 548 cannot be used to avoid a foreclosure as a fraudulent transfer once the property has been sold and the state redemption period has expired, there are two concerns with that conclusion that have not been

8

addressed below or in the briefs before us. First, the parties point to caselaw from our circuit in which we have adopted that time limitation for curing mortgage foreclosures, and they argue whether we should do the same with the tax foreclosure here. *See, e.g., In re Cain*, 423 F.3d 617 (6th Cir. 2005). But that caselaw and limitation is grounded in 11 U.S.C. § 1322(c)(1), which provides that "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of [§ 1322(b)] until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." This statutory language most specifically addresses the situation of when a home mortgage foreclosure can be cured so as to bring the property into the bankruptcy estate, though some bankruptcy courts have applied § 1322 in the context of tax foreclosures. *See, e.g., In re Martin*, 496 B.R. 323 (Bankr. S.D.N.Y. 2013). But whether § 1322(c)(1) applies to Michigan tax foreclosures was not relied upon or addressed below, and the parties have not adequately argued or briefed the issue here. Second, the parties have not addressed the interplay between § 1322 and § 548. Section 548 itself permits the undoing—within two years before bankruptcy—of constructive fraudulent transfers of property transferred without any other encumbrance or basis for retaining an interest, thus suggesting the possible argument that time limits for cure under § 1322 are not the same as time limits for § 548 purposes. We do not opine on the merits of these arguments, but because "we are a court of review, not first view," we leave them for consideration by the courts below in the first instance. *See Taylor v. City of Saginaw, Mich.*, 11 F.4th 483, 489 (6th Cir. 2021).

We reverse the judgment of the district court and remand to that court for proceedings consistent with this opinion. The district court may in its discretion further remand the case to the bankruptcy court.